# 11-3518-cv(L)
## 11-3629-cv(XAP)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

FAIVELEY TRANSPORT USA, INC., FAIVELEY TRANSPORT NORDIC AB,
FAIVELEY TRANSPORT AMIENS S.A.S., ELLCON NATIONAL, INC.,

*Plaintiffs-Appellees-Cross-Appellants,*

—against—

WABTEC CORPORATION,

*Defendant-Appellant-Cross-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLEES-CROSS-APPELLANTS

ANDREW JOHN PINCUS, ESQ.
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3220

A. JOHN PETER MANCINI, ESQ.
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Plaintiffs-Appellees-
Cross-Appellants*

## CORPORATE DISCLOSURE STATEMENT PURSUANT
## <u>TO FEDERAL RULE OF APPELLATE PROCEDURE 26.1</u>

Faiveley Transport USA, Inc. is a wholly-owned subsidiary of Faiveley S.A., a publicly listed foreign corporation organized under the laws of France. Ellcon National, Inc. is a wholly-owned subsidiary of Faiveley Transport USA, Inc. Faiveley Transport Amiens S.A.S. is a wholly-owned subsidiary of Faiveley S.A. and Faiveley Transport Amiens Nordic AB is a wholly-owned subsidiary of Faiveley Transport Malmö AB, a foreign corporation organized under the laws of Sweden, which is wholly-owned by Faiveley S.A.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF JURISDICTION..................................................4

STATEMENT OF ISSUES PRESENTED..........................................4

STATEMENT OF THE CASE............................................................5

STATEMENT OF FACTS ................................................................6

    A.    Plaintiffs Have the Exclusive Right to Manufacture and Distribute the Relevant Brake Products in North America.................6

    B.    Wabtec's Misappropriation and Its Effects..........................8

        1.    The 1993 License Agreement ....................................8

        2.    Wabtec's Tainted Reverse Engineering.....................9

        3.    Wabtec Concealed the License Termination, Misappropriation and Final Award from Customers, and Continued to Use the Trade Secrets to Make Significant Sales in the North American Market ......................................11

    C.    The Arbitration, Preliminary Injunction Proceeding and Damages Action ...................................................11

        1.    Faiveley's Discovery of Wabtec's Misappropriation ..............11

        2.    The District Court Found Faiveley Likely to Succeed in Proving Wabtec's Misappropriation .........................................12

        3.    The Tribunal Confirmed Wabtec's Misappropriation, Awarded Damages to Malmö and Expressly Held it Could Not Award Damages to Plaintiffs ................................13

        4.    Consistent with the Arbitration, Plaintiffs Sought and Were Awarded Damages for the Harm Caused Due to Wabtec's Misappropriation......................................15

STANDARDS OF REVIEW..............................................................16

SUMMARY OF ARGUMENT ........................................................18

ARGUMENT ....................................................................................20

I.    There is No Deficiency in Plaintiffs' Standing ...........................20

II.    Res Judicata Does Not Bar Plaintiffs' Claims...............................26

    A.    Wabtec is Judicially Estopped From Arguing Res Judicata .............27

    B.    Res Judicata is Inapplicable Because Malmö was Barred from Adequately Representing Plaintiffs' Interests....................................32

III.    The Jury's Damages Award Is Well-Supported By the Evidence and There is No Basis  for New Trial or Remittitur...........................................35

    A.    Plaintiffs are Entitled to Damages Sustained After the Date of the Arbitration Award .......................................................................37

    B.    Wabtec's Payment of $4.1 Million to Malmö Pursuant to the Final Award Does Not Impact Plaintiffs' Entitlement to Damages or Support Remittitur............................................................39

IV.    None of the District Court's Evidentiary Rulings Come Close to Justifying a New Trial ..................................................................................41

    A.    There Was No Prejudicial Error in Allowing Evidence of Post-Award Damages and Damages Based on Lost Contracts with NYCT .........................................................................................42

    B.    There was No Error in the Court's Other Rulings Regarding Plaintiffs' Damages Evidence ...........................................................45

    C.    The Court Properly Excluded the Testimony of Wabtec's Reverse Engineering Expert, Dr. Aly Badawy .................................48

        1.    Badawy's Testimony Was Irrelevant......................................49

            a.    Badawy's "Opinions" on Conclusively Established Legal Issues Were Irrelevant and Improper .................50

            b.    Badawy Failed to Consider Outcome-Determinative Facts........................................................52

        2.    Badawy's Testimony Was Unreliable .....................................54

        3.    The District Court's Summary Exclusion Ruling Does Not Create an Independent Ground for Reversal ...................57

CROSS APPEAL ........................................................................................59

I.    The District Court Erred in Striking Plaintiffs' Punitive Damages Claim...........................................................................................................59

    A.    Trade Secret Misappropriation is an Egregious Tort, That Often Warrants Punitive Damages .............................................................60

2

B.    Wabtec's Misconduct Was Wanton and Willful in the Extreme .......62

C.    The Availability of Punitive Damages Is an Issue Properly Tried to the Jury ................................................................................67

CONCLUSION ................................................................................68

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Fed. Grp., Ltd. v. Rothenberg*,
    136 F.3d 897 (2d Cir. 1998) ................................................................44

*Am. Nat'l Fire Ins. Co. v. Mirasco*,
    451 F. Supp. 2d 576 (S.D.N.Y. 2006) .................................................42

*Amorgianos v. Nat'l R.R. Passenger Corp*,
    303 F.3d 256 (2d Cir. 2002) ................................................................49

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
    361 F. Supp. 2d. 210 (S.D.N.Y. 2005) ................................................24

*AT&T Info. Sys., Inc. v. McLean Bus. Servs., Inc.*,
    175 A.D.2d 652 (4th Dep't 1991)........................................................67

*Barrett v. Black & Decker*,
    No. 06 Civ. 1970, 2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008) ........53

*Berk v. St. Vincent's Hosp.*,
    380 F. Supp. 2d 334 (S.D.N.Y 2005) ..................................................56

*Blissett v. Coughlin*,
    66 F.3d 531 (2d Cir. 1995) ..................................................................35

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)......................................................................64, 65

*Boisson v. Banian Ltd.*,
    280 F. Supp. 2d 10 (E.D.N.Y. 2003) ..................................................37

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996) ........................................................53, 54, 57

*Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*,
    617 F.3d 1040 (8th Cir. 2010) ............................................................18

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
    388 F. Supp. 2d 37 (N.D.N.Y. 2005)......................................22, 23, 25

*Chance v. Board of Examiners*,
    561 F.2d 1079 (2d Cir. 1977) ...................................................................30

*Ciraolo v. City of New York*,
    216 F.3d 236 (2d Cir. 2000) ....................................................................66

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    126 F.3d 365 (2d Cir. 1997) ....................................................................26

*Conte v. Justice*,
    996 F.2d 1398 (2d Cir. 1993) ..................................................................34

*Cross v. N.Y.C. Transit Auth.*,
    417 F.3d 241 (2d Cir. 2005) ....................................................................17

*DaimlerChrysler Srvs. v. Summit Nat.*,
    No. 02-71871, 2006 WL 1420812 (E.D. Mich. May 22, 2006).....................23

*Dallal v. New York Times Co.*,
    352 Fed. Appx. 508 (2d Cir. 2009)............................................................54

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).........................................................................passim

*Davis v. FEC*,
    554 U.S. 724 (2008)................................................................................25

*Dodge v. Cotter Corp.*,
    328 F.3d 1212 (10th Cir. 2003) ...............................................................58

*DTM Research, L.L.C. v. AT&T Corp.*,
    245 F.3d 327 (4th Cir. 2001) ...................................................................23

*E.E.O.C. v. Everdry Mktg. and Mgmt., Inc.*,
    348 Fed. Appx. 677 (2d. Cir. 2009)......................................................37, 66

*EDP Med. Computer Sys., Inc. v. U.S.*,
    480 F.3d 621 (2d Cir. 2007) ....................................................................32

*Electro-Miniatures Corp. v. Wendon Co.*,
    771 F.2d 23 (2d Cir. 1985) .................................................................43, 46

*Faiveley Transp. Malmö AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ("*Faiveley II*")................................................passim

*Faiveley Transp. Malmö AB v. Wabtec Corp.*,
    572 F. Supp. 2d 400 (S.D.N.Y. 2008) ("*Faiveley I*")..................................passim

*Fast Capital Mktg., LLC v. Fast Capital*, *LLC*,
    Civ. No. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008) ................22

*Fleck v. KDI Sylvan Pools, Inc.*,
    981 F.2d 107 (3d Cir. 1992) .............................................................................30

*G.H. Mumm Champagne v. E. Wine Corp.*,
    142 F.2d 499 (2d Cir. 1944) .......................................................................22, 23

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998) .............................................................................36

*GE Harris Ry. Elec., L.L.C. v. Westinghouse Air Brake Co.*,
    No. Civ. A99-070-GMS, 2004 WL 1854198 (D. Del. Aug. 18, 2004).............64

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997).........................................................................................56

*Global NAPs, Inc. v. Verizon New Eng. Inc.*,
    603 F.3d 71 (1st Cir. 2010).........................................................................18, 20

*Goldblatt v. Englander Commc'ns, LLC*,
    431 F. Supp. 2d 420 (S.D.N.Y. 2006) ..............................................................37

*Hartford v. Glastonbury*,
    561 F.2d 1032 (2d Cir. 1977) ...........................................................................26

*HSBC Bank USA, Nat. Ass'n v. Adelphia Comms. Corp.*,
    No. 07-CV-553A, 2009 WL 385474 (W.D.N.Y. Feb. 12, 2009)......................30

*Hudson Hotels Corp. v. Choice Hotels Int'l*,
    995 F.2d 1173 (2d Cir. 1993) ...........................................................................22

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992) .............................................................................16

*In re Cross Media Mktg. Corp.*,
06 Civ. 4228, 2006 WL 2337177 (S.D.N.Y. Aug. 11, 2006)............................61

*In re Faiveley Transport Malmö AB*,
No. 08 Civ. 3330, 2009 WL 3270854 (S.D.N.Y. Oct. 7, 2009)........................66

*In re Martin-Trigona*,
760 F.2d 1334 (2d Cir. 1985) ..............................................................42

*In re Wabtec Corp.*,
11-2146 (2d Cir. June 7, 2011) ..............................................................5

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*,
920 F.2d 171 (2d Cir. 1990) ................................................................22

*Jacobson v. Fireman's Fund Ins. Co.*,
111 F.3d 261 (2d Cir. 1997) ................................................................35

*Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*,
103 F. Supp. 2d 268 (S.D.N.Y. 2000) ....................................48, 49, 52

*Karaha Bodas Co, LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
364 F.3d 274 (5th Cir. 2004) ..............................................................30

*Kenford Co. v. County of Erie*,
67 N.Y.2d 257 (1986) ........................................................................44

*Lavan Petroleum Co. v. Underwriters at Lloyds*,
334 F. Supp. 1069 (S.D.N.Y. 1971) ..................................................46

*Luciano v. Olsten Corp.*,
110 F.3d 210 (2d Cir. 1997) ..............................................................42

*Lynch v. Trek Bicycle Corp.*,
374 Fed. Appx. 204 (2d Cir. 2010)................................................54, 57

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ..............................................................54

*Metron Tech. Distrib. Corp. v. Discreet Indus. Corp.*,
189 Fed. Appx. 3 (2d Cir. 2006)........................................................60

*Metso Minerals Indus., Inc. v. FLSMIDTH-Excel LLC*,
  733 F. Supp. 2d 969 (E.D. Wis. 2010) ........................................................23, 24

*Monahan v. N.Y.C. Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000) ................................................................26

*Motorola Credit Corp. v. Uzan*,
  413 F. Supp. 2d 346 (S.D.N.Y. 2006) .................................................66

*Muller on Behalf of Muller v. Comm. on Special Educ.*,
  145 F.3d 95 (2d Cir. 1998) ................................................................21

*Munafo v. Metro. Transp. Auth.*,
  381 F.3d 99 (2d Cir. 2004) ................................................................16

*Murray v. Silberstein*,
  882 F.2d 61 (3d Cir. 1989) ................................................................30

*N. Atl. Instruments, Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999) ..........................................................21, 22

*Nairn v. Nat'l R.R. Passenger Corp.*,
  837 F.2d 565 (2d Cir. 1988) ..............................................................36

*New Hampshire v. Maine*,
  532 U.S 742 (2001)..............................................................27, 29, 30

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
  442 F.3d 101 (2d Cir. 2006) ..............................................................59

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
  462 F.3d 87 (2d Cir. 2006) ................................................................27

*Pac. Mut. Life Ins. Co. v. Haslip*,
  499 U.S. 1 (1991)..............................................................................65

*Parrish v. Sollecito*,
  280 F. Supp. 2d 145 (S.D.N.Y. 2003) .................................................41

*Paz Sys., Inc. v. Dakota Grp. Corp.*,
  514 F. Supp. 2d 402 (E.D.N.Y. 2007)..................................................61

*Pike v. Freeman*,
   266 F.3d 78 (2d Cir. 2001) ...................................................26

*Preferred Elec. & Wire Corp. v. Katz*,
   462 F. Supp. 1178 (E.D.N.Y. 1978) ...................................22

*Rangolan v. Cnty. of Nassau*,
   370 F.3d 239 (2d Cir. 2004) ........................................17, 35

*Reed Elsevier, Inc. v. Muchnick*,
   130 S.Ct. 1237 (2010)........................................................28

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2001) ............................................32

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
   369 F.3d 113 (2d Cir. 2004) .............................................32

*Roode v. Michaelian*,
   373 F. Supp. 53 (S.D.N.Y. 1974) .....................................31

*Ross v. Louise Wise Servs.*,
   8 N.Y.3d 478 (2007) .....................................................60, 63

*Scala v. Moore McCormack Lines, Inc.*,
   985 F.2d 680 (2d Cir. 1993) ............................................35

*Selletti v. Carey*,
   173 F.3d 104 (2d Cir. 1999) ..............................................4

*Sims v. Blot*,
   534 F.3d 117 (2d Cir. 2008) ............................................17

*Softel, Inc. v. Dragon Medical and Scientific Commc'ns Ltd.*,
   891 F. Supp. 935 (S.D.N.Y. 1995) ...................................61

*State Farm Mut. Auto. Ins., Co. v. Campbell*,
   538 U.S. 408 (2003)..........................................................65

*Stichting Ter Behartiging v. Schreiber*,
   327 F.3d 173 (2d Cir. 2003) .............................................31

*Tasini v. New York Times Co., Inc.*,
206 F.3d 161 (2d Cir. 2000) ...............................................................17

*Taylor v. Brentwood Union Free Sch. Dis.*,
143 F.3d 679 (2d Cir. 1998) ...............................................................17

*Therrien v. Target Corp.*,
617 F.3d 1242 (10th Cir. 2010) ................................................59, 65

*Toltec Fabrics, Inc. v. August Inc.*,
29 F.3d 778 (2d Cir. 1994) ...............................................................44

*Topps Co. v. Cadbury Stani S.A.I.C.*,
380 F. Supp. 2d 250 (S.D.N.Y. 2005) ........................................60, 67

*Trademark Research Corp. v. Maxwell Online, Inc.*,
995 F.2d 326 (2d Cir. 1993) ...............................................................48

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
474 F.3d 1298 (Fed. Cir. 2007) .........................................................31

*Triple Tee Golf, Inc. v. Nike, Inc.*,
511 F. Supp. 2d 676 (N.D. Tex. 2007) ..............................................25

*Troll Co. v. Uneeds Doll Co.*,
483 F.3d 150 (2d Cir. 2007) ...............................................................32

*TXO Prod. Corp. v. Alliance Resources Corp.*,
509 U.S. 443 (1993) ............................................................................65

*U.S. v. Gallo*,
33 Fed. Appx. 542 (2d Cir. 2002) .......................................................58

*U.S. v. Mulder*,
273 F.3d 91 (2d Cir. 2001) ...............................................................58

*U.S. v. Woodcrest Nursing Home*,
706 F.2d 70 (2d Cir. 1983) ...............................................................35

*Usina Costa Pinto S.A. v. Louis Dreyfus Sugar Co.*,
933 F. Supp. 1170 (S.D.N.Y. 1996) ...................................................33

*Uzdavines v. Weeks Marine, Inc.*,
418 F.3d 138 (2d Cir. 2005) ................................................................18

*Welfare Fund, New Eng. Health Care Employees v. Bidwell Care C, LLC*,
419 Fed. Appx. 55 (2d Cir. 2011) .......................................................18

**STATUTES**

18 U.S.C. § 1832 ..................................................................................63

28 U.S.C. § 1291 ....................................................................................4

28 U.S.C. § 1332 ....................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ........................................................................15

Fed. R. Civ. P. 19 .................................................................................15

Fed. R. Evid. 404(b) .............................................................................65

Wright, Miller et al, 18A Fed. Prac. & Proc. Juris. § 4451 (2d ed.) .......................33

## PRELIMINARY STATEMENT

Wabtec's theft of trade secrets is not disputed in this proceeding. The determination made by the Arbitral Tribunal of the International Chamber of Commerce ("Tribunal") that Wabtec stole the trade secrets in question was properly confirmed by the District Court. Joint Appendix ("JA")-2986 (¶797); JA-3008, 3012 (¶¶884, 896); Special Appendix ("SA")-44-46. Wabtec does not challenge that determination.

The sole question here is the recovery of damages by Faiveley Transport USA, Inc. ("Faiveley USA"), Faiveley Transport Nordic AB ("Faiveley Nordic"), Faiveley Transport Amiens S.A.S. ("Faiveley Amiens") and Ellcon National, Inc. ("Ellcon") (collectively "Plaintiffs"), for the harms caused by Wabtec's theft of the trade secrets required to manufacture brake products sold in the North American market. Faiveley Transport Malmö AB ("Malmö"), a corporate affiliate of Plaintiffs, argued in an arbitration before the Tribunal in Sweden ("Arbitration") that it was entitled to recover those damages. Wabtec contended that those damages were not recoverable there, because entities other than Malmö were jurisdictionally barred from participating in the Arbitration; Wabtec contended that those claims would have to be asserted in separate proceedings elsewhere. JA-2924 (¶552-55); JA-1792-98 (¶¶5.11.1, 5.11.6, 5.11.6.1, 5.11.8.3). The Tribunal agreed with Wabtec, and expressly stated that the damages being awarded to

Malmö *did not include* the damages suffered by these other Faiveley entities—Plaintiffs here—which the Tribunal noted had suffered the majority of the harm from Wabtec's actions. JA-3008-09 (¶¶882-83, 887).

Plaintiffs accordingly commenced the present action in the United States District Court for the Southern District of New York, asserting the damages claims that Wabtec successfully excluded from the Arbitration. JA-1-39. In a complete—and incredible—reversal of its position in the Arbitration, Wabtec argued in the District Court and continues to argue before this Court that Plaintiffs should have obtained damages from the Arbitration Tribunal—the very Tribunal Wabtec convinced *not* to award damages incurred by entities other than Malmö. SA-12. Further, although Wabtec argued to the Tribunal that Plaintiffs' claims must be heard in a separate jurisdiction, Wabtec contends that Plaintiffs had no standing to sue here. SA-17-20; 43-44.

The District Court rejected Wabtec's attempts to avoid the separate damages determination that Wabtec itself had successfully called for in the Arbitration. SA-44, 46, 50. At trial, Wabtec made its case, presenting experts to opine on both the value of the trade secrets and the damage sustained by Plaintiffs. Notwithstanding Wabtec's efforts, the jury awarded Plaintiffs $18.1 million plus interest. JA-760-61 (999:11-1000:2).

In post-trial submissions and here, Wabtec then conjured additional baseless arguments to avoid liability. Wabtec claims that Plaintiffs' damages should terminate as of the date of the Arbitration Award on the wholly implausible theory that the Tribunal granted Wabtec the right to continue to use the stolen trade secrets *without penalty* for as long into the future as Wabtec wishes. JA-1487-1519; Br. at 40-46. This nonsensical argument ignores: (i) this Court's prior determination that damages are an appropriate alternative remedy to an injunction (*Faiveley Transp. Malmö AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009) ("*Faiveley II*")); (ii) the express language of the Tribunal's Award which states that "[Wabtec] may continue to use its [tainted] reverse engineered drawings . . . For this taint, [Wabtec] is indeed condemned [ ] to pay damages . . ." (JA-3013 (¶902)); and (iii) the clear findings of the District Court.

Despite a full and fair opportunity to litigate both in the Arbitration and at every juncture of this case, Wabtec asks this Court to allow it to avoid the consequences of its blatant, intentional theft, leaving Wabtec free to continue to steal valuable customer contracts unencumbered. The District Court properly rejected each and every one of Wabtec's challenges. Justice requires that both the District Court's rulings and the jury's verdicts should stand.

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1332, because there is complete diversity and the amount in controversy exceeds $75,000. JA-2-3 (¶¶2-7). On September 1, 2011, Plaintiffs timely filed a Notice of Cross-Appeal from the District Court's August 1 Order and Final Judgment (JA-1618), limited to the District Court's decision withholding Plaintiffs' punitive damages claim from the jury. The District Court's Order and Final Judgment encompasses all prior interlocutory rulings, including the ruling on punitive damages, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. *Selletti v. Carey*, 173 F.3d 104, 109 n.5 (2d Cir. 1999).

## STATEMENT OF ISSUES PRESENTED

1. Whether the District Court erred in determining that Plaintiffs have standing to assert their trade secret claims based on Plaintiffs' possession of the trade secrets.

2. Whether the District Court erred in rejecting Wabtec's *res judicata* claim on the grounds that (a) Wabtec was judicially estopped from asserting that argument, and (b) *res judicata* does not apply, because the Arbitration Tribunal determined that Plaintiffs' claims could not be adjudicated in the arbitration proceeding.

3. Whether the District Court abused its discretion in denying remittitur and a new trial on the jury's damages determination even though the verdict was based on ample support in the record and the proper interpretation of the Award.

4. Whether the District Court abused its discretion in denying a new trial based on the admission of certain evidence regarding Plaintiffs' damages and the exclusion of improper expert testimony.

5.  Whether Plaintiffs' punitive damages claim should have been presented to the jury where the record reflects willful and egregious trade secret misappropriation and other willful misconduct.

## STATEMENT OF THE CASE

In December 2009, the Tribunal issued its award finding that Wabtec misappropriated the trade secrets ("Award"). JA-2986 (¶797). At Wabtec's urging, the Tribunal concluded that it could not consider Plaintiffs' damages claims as part of the Arbitration and awarded Malmö $3.9 million in damages, solely for the harm caused to Malmö by Wabtec's misappropriation. JA-2986 (¶896).

Consistent with the Award, Faiveley USA, Faiveley Nordic, Faiveley Amiens and Ellcon—the exclusive manufacturers and distributors of the Brake Products in the North American market—filed this action seeking damages for the harm they suffered from Wabtec's misappropriation. JA-1-39. The District Court (Rakoff, J.) denied Wabtec's motions to dismiss and for summary judgment, and granted summary judgment for Plaintiffs as to Wabtec's liability for trade secret misappropriation, unfair competition and unjust enrichment.[1] SA-3-22, 25-50.

---

[1] On May 25, 2011, Wabtec filed a petition for a writ of mandamus from this Court, seeking review of the District Court's May 13, 2011 summary judgment order. *In re Wabtec Corp.*, 11-2146 (2d Cir. June 7, 2011). On June 7, 2011, this Court denied Wabtec's mandamus petition without seeking additional briefing by Wabtec or any response from Plaintiffs. JA-14904-05.

A jury trial was held in June 2011 on the issue of damages. The District Court submitted the compensatory damages and unjust enrichment claims to the jury, but, on Wabtec's motion, dismissed Plaintiffs' claim for punitive damages. The jury awarded Plaintiffs $18.1 million in unjust enrichment damages and, in the alternative, $14.5 million in lost profit damages. JA-760-61 (999:11-1000:2). Wabtec moved for judgment as a matter of law or, alternatively, a new trial or remittitur on numerous grounds. SA-51-52. The District Court denied that motion on August 1, 2011, noting that Wabtec's arguments (most of which had been raised and rejected several times) were unconvincing in light of "the parties' submissions, as well as the underlying trial record . . . ." *Id.* Wabtec filed a Notice of Appeal on August 29, 2011. JA-1603-04. On September 1, 2011, Plaintiffs timely filed a Notice of Cross-Appeal, limited to the Court's decision withholding the issue of punitive damages from the jury. JA-1618.

## STATEMENT OF FACTS

### A. Plaintiffs Have the Exclusive Right to Manufacture and Distribute the Relevant Brake Products in North America

Malmö in 2004 acquired a company known as SAB Wabco, which designed and manufactured brake equipment and other components of railway cars. SA-28; SA-6; *Faiveley Transp. Malmö AB v. Wabtec Corp.*, 572 F. Supp. 2d 400, 402 (S.D.N.Y. 2008) ("*Faiveley I*"); *Faiveley II* at 114; JA-425 (167:17-20). Malmö became the successor-in-interest to SAB Wabco's intellectual property relating to

6

several transit brake products, including the Brake Friction Cylinder Tread Brake Unit ("BFC"), PB actuator ("PB") and PBA actuator ("PBA") (collectively the "Brake Products"). The Brake Products are used in passenger railway transit systems, including the New York City Transit Authority ("NYCT") subway system and Amtrak. *Faiveley I* at 402; JA-388 (138:18-139:1). Transit authorities, such as NYCT, purchase Brake Products for their trains and replace them system-wide approximately every thirty years. JA-386, 434, 454 (130:14-131:12, 203:9-14, 286:8-10). The components of the Brake Products are also serviced (or "overhauled") every 4 to 6 years and repaired regularly. JA-384 (122:7-17); JA-432 (195:17-196:6); JA-455 (288:6-9); JA-473 (362:13-18). Accordingly, a transit authority typically enters into a multi-year, multi-million dollar contract with a manufacturer such as Wabtec or Plaintiffs for the supply of all of the parts necessary for the system-wide overhaul and repair efforts. JA-432 (195:17-196:6); JA-434 (203:1-22).

Since January 1, 2007, Plaintiffs have collectively possessed the exclusive license from Malmö to manufacture, use, sell, and market the Brake Products in North America.[2] SA-28-29; SA-6; JA-3435-65. Based on these rights, Plaintiffs

---

[2] Ellcon was acquired by Faiveley USA in 2008 and was given, by Malmö, license to manufacture and distribute the Brake Products in North America at that time. Prior to the acquisition of Ellcon, Faiveley USA supplied the Brake Products to the North American market, by distributing parts manufactured by Faiveley

collectively manufacture and distribute the Brake Products in the North American market.[3]  JA-434 (204:11-205:17); SA-28-29.

### B.   Wabtec's Misappropriation and Its Effects

#### 1.   The 1993 License Agreement

In 1993, SAB Wabco (Malmö's predecessor-in-interest) and Wabco (Wabtec's predecessor-in-interest) entered into an agreement whereby Wabco obtained a license to certain products, including the Brake Products (the "License Agreement").  JA-829-51; *see also* SA-29; SA-6; JA-2953-55 (¶¶671-74); *Faiveley I* at 402.  The License Agreement authorized Wabco to use "know-how" belonging to SAB Wabco, including "manufacturing data, specifications, designs, plans, trade secrets," and other information required to produce and market the Brake Products. JA-830(¶2.1); *see also* SA-29; SA-6; *Faiveley I* at 402; *Faiveley II* at 114.  These trade secrets were contained in the manufacturing drawings supplied to Wabtec during the course of the License Agreement ("Manufacturing Drawings").  JA-2973-74 (¶744); SA-29; *Faiveley I* at 402.  Before entering into the License

---

Nordic and Faiveley Amiens or sourcing required parts locally.  JA-434 (205:23-206:7).

[3]    Ellcon is currently the entity responsible for distribution of the Brake Products in North America, as well as their service, overhaul and repair.  JA-452 (275:15-18).  The BFC is manufactured by Faiveley Nordic and Ellcon and sold in the North American marketplace by Ellcon.  JA-434 (204:15-18); JA-3456-3465. The PB and PBA are manufactured by Faiveley Amiens and Ellcon.  JA-3435-3445 (204:19-205:6).

Agreement, Wabtec had no experience with the Brake Products and no comparable brake product to offer the market. *Faiveley I* at 402. The License Agreement terminated on December 31, 2006. JA-2964 (¶712). On that date, Wabtec's rights to use the trade secrets and other "know-how" provided under the License Agreement also terminated. *Id.*; JA-2987(¶762).

### 2. Wabtec's Tainted Reverse Engineering

Wabtec in 2005 began its effort to "reverse engineer" the Brake Products, hiring two independent engineering firms unfamiliar with the trade secrets. JA-2985 (¶793). Its two attempts to reverse engineer the Brake Products with the independent firms failed. *Id.*; SA-31; *Faiveley I* at 406-07; *Faiveley II* at 118.

Wabtec then decided, in mid-2007—after the expiration of the License Agreement—to pursue a third reverse engineering effort, this time utilizing Wabtec employees familiar with the trade secrets. JA-2985 (¶793); SA-37; *Faiveley I* at 406-07; *Faiveley II* at 118. This in-house reverse engineering effort involved "[s]everal of [Wabtec's] employees and engineers involved in the manufacturing process under the License Agreement." JA-2984 (¶791); *see also* JA-2985 (¶793); SA-31; *Faiveley I* at 406-07. Wabtec also hired RTC, a firm "run by a former Wabtec employee with at least some exposure to Faiveley's manufacturing drawings," as well as a firm named Alkab, to produce reverse engineered drawings. *Faiveley I* at 407-08; JA-2985 (¶793); SA-31. Roland Moore, the

9

Senior Engineer in Wabtec's Compressor Group and the "best most knowledgeable person about Faiveley trade secrets and manufacturing drawings," was the primary Wabtec contact for RTC and Alkab. JA-2984 (¶791); *see also* JA-2984-86 (¶¶793, 794, 796); SA-30-31; *Faiveley I* at 406.

The "reverse engineered" drawings produced by RTC and Alkab were missing crucial information, including tolerances and manufacturing information. JA-2985 (¶¶792-93); *Faiveley I* at 408. Left with these drawings—which would yield nothing more than "scrap" (JA-4938) if used—Wabtec turned to persons with knowledge of the trade secrets. JA-2985 (¶¶792-93); *Faiveley I* at 408. Although Wabtec had no right to maintain the Manufacturing Drawings after the expiration of the License Agreement, Roland Moore maintained a "long list" of the Manufacturing Drawings on his computer throughout the reverse engineering process. JA-2985 (¶792). Indeed, Moore provided the information required to make the reverse engineered drawings useable, including "very detailed comments on tolerances and other information." *Id.*; *see also* SA-31; JA-2984-86 (¶¶791-96); *Faiveley I* at 406-08. Moore "made substantial changes to the drawings, not less than 50 of them." JA-2985 (¶794); SA-31; *Faiveley I* at 406-08.

10

3.     <u>Wabtec Concealed the License Termination, Misappropriation and Final Award from Customers, and Continued to Use the Trade Secrets to Make Significant Sales in the North American Market</u>

After the December 31, 2006 termination of the License Agreement, Wabtec continued to make sales of the Brake Products in the North American market, including securing over a dozen contracts to supply transit authorities including NYCT and Amtrak. SA-29-30, 33; JA-429-32 (186:11-18, 189:18-190:5, 198:5-16). But Wabtec would not have been able to make any of these sales or fulfill any of the contracts—including a very profitable NYCT contract—without using the misappropriated trade secrets. JA-2981 (¶776); SA-25-26. Yet Wabtec "communicated to its clients that it was business as usual," misleading them to believe that the trade secrets and underlying technical know-how belonged to Wabtec. JA-2981 (¶776); SA-25-26.

**C.     The Arbitration, Preliminary Injunction Proceeding and Damages Action**

1.     <u>Faiveley's Discovery of Wabtec's Misappropriation</u>

Because Wabtec went to great lengths to conceal its misappropriation from customers and others, it was only thanks to an anonymous whistle-blower from Wabtec that Malmö learned of the misappropriation. JA-430-32 (190:6-195:13); JA-818-28. In mid-May 2007, senior executives within Faiveley USA received an unmarked envelope with no return address bearing a postmark of Spartanburg, South Carolina—home to Wabtec's facilities. JA-430-32 (190:6-195:13). Inside

11

was a document showing that Wabtec was changing the part numbers and the internal reference numbers for its Manufacturing Drawings for the Brake Products, without altering the information contained therein. The document indicated that the reason for the changes was the termination of the License Agreement. JA-430-432 (190:6-195:13); JA-818-28. Once the License Agreement terminated, Wabtec simply placed its own label and reference numbers on Faiveley's proprietary Manufacturing Drawings, and called them its own. *Id.*; JA-430-432 (190:6-195:13).

On October 18, 2007, Malmö commenced the Arbitration in Sweden, as provided for in the License Agreement. JA-2783 (¶6). On the same day, to limit the harm being suffered in the North American market due to Wabtec's actions, Malmö also sought injunctive relief in aid of the Arbitration from the District Court (the "Preliminary Injunction Proceeding"). *Faiveley I* at 400.

### 2. The District Court Found Faiveley Likely to Succeed in Proving Wabtec's Misappropriation

After a four-day hearing, the District Court issued a preliminary injunction, prohibiting Wabtec from entering into or bidding for any new contracts to manufacture, supply, or sell the Brake Products. *Faiveley I* at 409-10; SA-26. The District Court found, *inter alia*, that (i) the Manufacturing Drawings owned by Malmö contained trade secrets; (ii) Wabtec's reverse engineering process was "fatally tainted by the involvement of Roland Moore"; and (iii) it was "probable

12

that Wabtec will be unable to meet" its burden to establish that its reverse engineering process was fully independent from access to Faiveley trade secrets in any final adjudication on the merits. *Faiveley II* at 117-18; *Faiveley I* at 407-08; SA-25-26. This Court vacated the injunction granted by the District Court on the limited ground that Malmö was not likely to suffer harm that could not be addressed by monetary damages in absence of an injunction. *Faiveley II* at 119-21.

      3.    <u>The Tribunal Confirmed Wabtec's Misappropriation, Awarded Damages to Malmö and Expressly Held it Could Not Award Damages to Plaintiffs</u>

At the outset of the Arbitration, Wabtec disputed Malmö's ability to recover damages on behalf of Plaintiffs. Wabtec asserted that Faiveley entities other than Malmö (such as Plaintiffs here) did not have standing to participate in the Arbitration because they were not parties to the License Agreement (JA-1796 (¶5.11.6.1)), and that the Tribunal therefore did not have jurisdiction to adjudicate Plaintiffs' damages claims. JA-1795 (¶5.11.6); JA-1798 (¶5.11.8.3); *see also* JA-2924 (¶¶553-55); JA-1803 (¶5.11.8.20).

To convince the Tribunal to accept its argument that Plaintiffs' claims could not be adjudicated, Wabtec argued that Plaintiffs would not be barred by *res judicata* from pursuing damages in a separate proceeding. JA-1803 (¶¶5.11.8.20); *see also* JA-2924 (¶552-55); JA-1796 (¶5.11.6.1) ("[a]ny right to damages for

13

[their losses] must be determined according to the jurisdiction where each specific legal entity operates."); JA-1792-98 (¶¶5.11.1, 5.11.6, 5.11.6.1, 5.11.8.3). The Tribunal adopted Wabtec's position. JA-3008-09 (¶¶882, 887).

After numerous submissions and following the presentation of extensive evidence in the course of a two-year proceeding, the Arbitration Tribunal issued its Final Award on December 21, 2009.[4] The Tribunal held, *inter alia*, that (i) the Manufacturing Drawings supplied to Wabtec contained trade secrets (JA-2973-74 (¶744)); (ii) Roland Moore had made substantial changes to Wabtec's reverse engineered drawings based on his knowledge, and "[h]is involvement definitely tainted the reverse engineering process (JA-2984-86 (¶¶791-95)); and (iii) Wabtec's reverse engineering process was tainted (JA-2983-86 (¶¶787-96)). The Tribunal awarded Malmö $3.9 million, plus interest, but expressly did *not* address the claims of Plaintiffs here. JA-3012 (¶896).

The Tribunal was careful to emphasize that "[its] decision that [Malmö] may only claim damages suffered by itself is important in the context of the damages claim to the extent that it is the Tribunal's opinion that the damages invoked by Claimant have primarily occurred on the US market." JA-3009 (¶883). The Tribunal stated that it was "obvious that most of the damages suffered as a consequence" of Wabtec's actions were suffered by Faiveley entities other than

---

[4] The District Court confirmed the Arbitration Award, upon Malmö's motion, on May 10, 2010. JA-5309-11.

Malmö. JA-3009 (¶887); *see also* JA-3007-08 (¶¶880-82). The Tribunal expressly contemplated that these other Faiveley entities would be permitted to bring later proceedings to recover the damages owed to them. JA-3008 (¶882); SA-13; SA-36.[5]

> ### 4. Consistent with the Arbitration, Plaintiffs Sought and Were Awarded Damages for the Harm Caused Due to Wabtec's Misappropriation

Consistent with the Award, the remaining Faiveley entities, Plaintiffs here, commenced this action seeking damages from Wabtec for misappropriation, unfair competition, and unjust enrichment. SA-1-39. Wabtec filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 19, on the grounds that, *inter alia*, Malmö was an indispensable party and *res judicata* barred the Faiveley entities from seeking relief. SA-3-22. The District Court denied these motions in their entirety. *Id.* The District Court subsequently granted Plaintiffs summary judgment as to liability on their claims for misappropriation, unfair competition, and unjust enrichment. SA-25-26.

---

[5]     Wabtec's claim that the Tribunal rejected Plaintiffs' claims on the merits is both mystifying and misleading. Wabtec cites portions of the Award addressing general jurisdictional issues, and completely ignores the critical paragraphs of the Award, discussed in the text above (JA-3008-09, (¶¶ 881-83, 887)) specifically refusing to resolve those claims. Wabtec similarly mischaracterizes the Tribunal's findings regarding the wrongfulness of Wabtec's acts (*compare* Br. 14-15 *with* JA-2894-86 (¶¶789-96)) and Wabtec's continuing use of the stolen trade secrets (*compare* Br. 15 *with* JA-2891 (¶¶775-77); JA-¶902)). *See generally* SA-12-13; 27-28; SA-30 n.1; SA-30-32.

In June 2011, the District Court convened a jury trial on the issue of damages. Evidence adduced at trial confirmed that Wabtec *continues* to make sales to transit authorities based on use of Faiveley's trade secrets, at great economic harm to Plaintiffs in their role as the exclusive manufacturers and distributers of the Brake Products in North America. The jury awarded Plaintiffs $18.1 million in unjust enrichment damages and, in the alternative, $14.5 million in lost profit damages. JA-760-61 (999:11-1000:2).

## STANDARDS OF REVIEW

Despite Wabtec's attempts to divert attention from the deference owed to the jury's award and to the decisions made by the District Court, the applicable standards of review are clear.

The denial of Wabtec's requests for a new trial or to remit damages, and the District Court's evidentiary rulings, are reviewed for abuse of discretion. A new trial is not warranted "unless [the Court] is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hygh v. Jacobs,* 961 F.2d 359, 365 (2d Cir. 1992). In reviewing the District Court's denial of the motion for a new trial, the Court "view[s] the evidence in the light most favorable to the nonmoving party and will reverse only if the trial court's denial of the new trial motion constitutes an abuse of discretion." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir. 2004). Similarly, a District Court's ruling on

16

whether a damages award should be permitted under New York law is reviewed "only for abuse of discretion." *Rangolan v. Cnty. of Nassau,* 370 F.3d 239, 245 (2d Cir. 2004). Likewise, the District Court's evidentiary rulings may be reversed only if based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot,* 534 F.3d 117, 132 (2d Cir. 2008).

The District Court's denial of Wabtec's motions for summary judgment and judgment as a matter of law are reviewed *de novo*. Wabtec's burden in challenging the denial of a motion for judgment as a matter of law is "particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). "In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Taylor v. Brentwood Union Free Sch. Dis.*, 143 F.3d 679, 685 (2d Cir. 1998). In the same vein, when reviewing the denial of summary judgment, this Court decides legal issues *de novo*, but the "the evidence [is viewed] in the light most favorable to the non-moving party." *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 165 (2d Cir. 2000).

Finally, the review standard for the application of judicial estoppel is "an open question in this court." *Welfare Fund, New Eng. Health Care Employees v. Bidwell Care C, LLC*, 419 Fed. Appx. 55, 59 n.6 (2d Cir. 2011).[6] In any event, the application of judicial estoppel should be upheld even under *de novo* review.

## SUMMARY OF ARGUMENT

Wabtec puts forth no credible basis for reversing the judgment below. New York law requires *possession* of a trade secret to bring a claim for misappropriation, and Plaintiffs indisputably possess the trade secrets at issue. Wabtec's arguments regarding deficiencies in Plaintiffs' licenses are irrelevant both on the law and on the facts of this case.

Wabtec's remarkably self-serving argument that *res judicata* bars Plaintiffs' claims is also plainly meritless. First, judicial estoppel prevents Wabtec from precluding Plaintiffs' claim here, because Wabtec argued precisely the opposite in the Arbitration, and succeeded in barring Plaintiffs' claims from consideration there. Second, on the merits, *res judicata* is inapplicable because Malmö was not

---

[6] Wabtec ignores the ambiguity regarding the appropriate standard. Br. at 21; *see Welfare Fund*, 419 Fed. Appx. 55, 59 n.6 (citing *DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103–05 (2d Cir. 2010) (vacating application of judicial estoppel without clarifying standard of review); *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 143 (2d Cir. 2005) (using *de novo* standard without discussion), *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.,* 617 F.3d 1040, 1051 (8th Cir. 2010) (resolved in favor of abuse-of-discretion review); *Global NAPs, Inc. v. Verizon New Eng. Inc.,* 603 F.3d 71, 89 (1st Cir. 2010) (same)).

permitted to present—let alone adequately represent—Plaintiffs' interests during the Arbitration.

Wabtec does not come close to meeting the high burden required for remittitur or a new trial. A plain reading of the Award confirms that Plaintiffs are entitled to damages sustained after the date of the Award, and the fact that Wabtec continues (and will continue) to derive profits from its unlawful use of the trade secrets is indisputable. Moreover, Wabtec's payment of $4.1 million to Malmö does not support remittitur here, because the Award, on its face, was expressly limited to the damages suffered by Malmö, *to the exclusion of other Faiveley entities*. The District Court committed no error in admitting evidence regarding profits lost by Plaintiffs on sales to NYCT, because Plaintiffs—the only other supplier of the Brake Products in North America—would undoubtedly have made those sales absent Wabtec's misappropriation. The District Court also rightly excluded the testimony of Wabtec's reverse engineering expert, Dr. Badawy, because his testimony was not fit for a jury. He sought to testify with respect to liability, in direct contradiction of the Tribunal's determinations and the District Court's summary judgment ruling on that issue, and his refusal to consider the established and indisputable facts of this case rendered his analysis irrelevant and unreliable.

With respect to Plaintiffs' claim for punitive damages, the District Court erred by striking Plaintiffs' claim for punitive damages on the ground that no reasonable jury could find that Wabtec's conduct warranted punitive damages under New York law. The substantial evidence of Wabtec's willful and wanton trade secret theft establishes that Plaintiffs are entitled to punitive damages or, at the very least, that the jury should have decided that question.

## ARGUMENT

### I. There is No Deficiency in Plaintiffs' Standing

Wabtec's argument that Plaintiffs lack standing here is just the most recent in the long string of arguments that Wabtec has advanced in attempting to avoid any liability for its deliberate misappropriation and unfair competition. Wabtec argued in the Arbitration that Malmö could not recover damages owed to Plaintiffs, and that Plaintiffs would need to seek relief separately. JA-2924 (¶552-55); JA-1792-98 (¶¶5.11.1, 5.11.6, 5.11.6.1, 5.11.8.3). The Tribunal agreed. JA-3008-09 (¶¶882-83, 887). Now, having successfully forced Plaintiffs to seek relief in a separate proceeding, Wabtec claims that Plaintiffs do not have standing *here*.[7]

---

[7] Wabtec similarly sought to dismiss this action on the basis that Malmö was a necessary and indispensable party, but that it could not be joined because the Tribunal had already adjudicated its rights. SA-17. As the District Court explained in rejecting these contentions, Malmö was not a necessary party, and even if it were, "equity and good conscience" counseled against dismissal because "if the Court were to dismiss this action for nonjoinder, plaintiffs would be deprived of a forum in which to bring its claims against Wabtec." *Id.*

Leaving aside the obvious point that Wabtec seeks to leave Plaintiffs without a forum to hear their claims, Wabtec's argument that Plaintiffs lack standing is without legal merit, as the District Court held.  SA-17-20; 43-44.

The District Court observed that, as the "Second Circuit has consistently held," New York law is clear:  "possession of a trade secret is sufficient to confer standing on a party for a claim of trade secret misappropriation."    SA-17. Wabtec's arguments about alleged deficiencies in the licenses between Plaintiffs and Malmö are thus entirely irrelevant.  Wabtec's arguments are fundamentally flawed for three primary reasons.

*First*, the record establishes that Plaintiffs are the exclusive manufacturers and distributors of the Brake Products in North America and that Plaintiffs collectively possess the trade secrets.[8]  *See* JA-28-29.  These factual determinations are subject to reversal only for clear error.  *Muller on Behalf of Muller v. Comm. on Special Educ.*, 145 F.3d 95, 102 (2d Cir. 1998); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).  Wabtec has not even argued that the District Court's determination was clearly erroneous, as it cannot.

---

[8]    Faiveley Nordic, Faiveley Amiens and Ellcon manufacture the Brake Products and possess the trade secrets necessary to do so.  Prior to the acquisition of Ellcon, Faiveley USA was the exclusive distributor of the Brake Products—manufactured by Faiveley Nordic and Faiveley Amiens—in North America.  JA-434 (205:23-206:7).

Despite Wabtec's attempts to muddle the record and the law, Plaintiffs' well-established possession of the trade secrets is wholly sufficient for standing here. This Court and other district courts in the Second Circuit have ruled that under New York law, standing for a claim of trade secret misappropriation requires only *lawful possession* of the trade secret. *See, e.g., N. Atl. Instruments*, 188 F.3d at 43-44 ("To succeed on a claim for misappropriation of trade secrets under New York law, a party must demonstrate [] that it possessed a trade secret . . ."); *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993) (same); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (same). As the District Court held, "courts applying New York law have consistently rejected the notion that only the entity from which a trade secret was misappropriated has standing to bring suit for that misappropriation." SA-18 (citing *Bus. Trends Analysts v. Freedonia Grp., Inc.*, 650 F. Supp. 1452, 1458 (S.D.N.Y. 1987)); *see also Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 67 (N.D.N.Y. 2005); *Preferred Elec. & Wire Corp. v. Katz*, 462 F. Supp. 1178, 1185 (E.D.N.Y. 1978) (granting preliminary injunction to trade secret owner and related company acting as "sales arm"); *Fast Capital Mktg., LLC v. Fast Capital, LLC*, Civ. No. H-08-2142, 2008 WL 5381309, at *27 (S.D. Tex. Dec. 24, 2008) (applying New York law); *see also*

22

*G.H. Mumm Champagne v. E. Wine Corp.*, 142 F.2d 499, 502 (2d Cir. 1944) (exclusive distributor has sufficient standing).

Indeed, Plaintiffs' collective possession and corporate affiliation is the precise situation expressly recognized by New York law in which "possession" suffices to establish standing. In *Cargill*, the plaintiff sought to enforce a trade secret owned by a corporate affiliate, and the court decisively rejected the defendant's challenge to the plaintiff's standing: "[T]he question of trade secret ownership as between two closely aligned corporate affiliates presents nothing more than an unnecessary distraction, and is not critical to the right . . . to enforce the trade secret." 388 F. Supp. 2d at 66. Having shown possession of the trade secrets, New York law requires Plaintiffs to do nothing further to establish standing.[9]

---

[9] Throughout this case, Wabtec has attempted to bolster its standing argument by asserting that the Uniform Trade Secrets Act ("UTSA") requires ownership of the trade secrets and that requirement applies here. As the District Court noted, however, *New York has not adopted the UTSA*. SA-18. In addition, even courts applying various versions of the UTSA have recognized that possession of a trade secret is sufficient to sue for misappropriation. *See, e.g., DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) ("[O]ne who *possesses* non-disclosed knowledge may demand remedies as provided by the Act against those who 'misappropriate' the knowledge."); *Metso Minerals Indus., Inc. v. FLSMIDTH-Excel LLC*, 733 F. Supp. 2d 969, 971, n.4 (E.D. Wis. 2010) ("[T]he court's holding hinges on Metso's lawful possession of the trade secrets (an issue not contested) rather than the extent of Metso's proprietary interest in the trade secrets. Thus, whether or not Metso's interest is in fact a 'non-exclusive' license is irrelevant to the court's holding."); *DaimlerChrysler Srvs. v. Summit Nat.*, No. 02-71871, 2006 WL 1420812, at *7-8 (E.D. Mich. May 22, 2006) ("[F]or purposes of

23

*Second*, even if a license were necessary to establish standing—and the New York law just discussed shows it is not—there was sufficient evidence of the licenses here.[10]   That Plaintiffs and Malmö did not commit their licensing relationship to paper until 2010 is of no moment given the undisputed evidence regarding Plaintiffs' roles in connection with the manufacture and distribution of the Brake Products.  Indeed, Plaintiffs undeniably have had an implied exclusive license since the termination of the License Agreement with Wabtec.  JA-426-427 (172:24-173:8; 175:9-23; 176:23-177:11; 205:1-206:7)   *See, e.g.*, *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 361 F. Supp. 2d. 210, 215-16 (S.D.N.Y. 2005) (denying summary judgment where there was "more than enough evidence on which a reasonable juror could believe that there was an oral and/or implied

---

trade secrets law, the focus is appropriately on the knowledge, or possession, of the trade secret, rather than on mere 'ownership' in the traditional sense of the word . . . .").

[10]   Wabtec relies heavily upon on patent cases for the argument that exclusive licenses are required.  Br. at 24-26.  Wabtec's argument that the ownership requirement in the patent context should apply in the trade secret context (and that Plaintiffs must therefore have an official exclusive license) is unavailing.  First, "the requirement of an ownership interest in a patent is found in the Patent Act of 1952 itself" and no parallel language exists in trade secret law, either in New York or under the UTSA.  *See Metso*, 733 F. Supp. 2d at 977-78, 978 n.14.  Second, trade secret misappropriation is more than an "intrusion upon the property of another."  *Id.* (rejecting argument that ownership requirement in patent context should be applied in trade secret context).  Wabtec's reliance on copyright cases is unavailing for the same reason.  *Id.* (rejecting party's reliance on copyright authority as "completely out of context" and having "no relation to the discussion of whether [party] has standing to bring its trade secret claims").

exclusive license" between licensor and licensee based on "nature of business relationship").[11]

*Third*, Wabtec's policy argument that allowing possession to confer standing would somehow allow "a potentially limitless number of nonexclusive licensees" to bring misappropriation suits in the future (Br. at 28) cannot be squared with the facts of this case. Unlike a scenario involving unrelated entities, arguments regarding whether closely aligned corporate affiliates—such as Malmö and Plaintiffs—can enforce trade secret rights "present[ ] nothing more than an unnecessary distraction." *Cargill*, 388 F. Supp. 2d at 66. Here, there is simply no risk that an untold number of entities will bring trade secret claims in connection with the Brake Products. Moreover, it often is the case in many areas of the law that multiple plaintiffs have standing to assert the same claim; the Federal Rules of Civil Procedure give Courts numerous tools to address concerns about multiple actions.

Accordingly, Plaintiffs clearly had the "requisite stake in the outcome" to satisfy the Constitutional standing inquiry, and were well "within the zone of interests" protected by trade secret law in satisfaction of any prudential standing prerequisites in the trade secret context. *See Davis v. FEC*, 554 U.S. 724, 734

---

[11] Wabtec's reliance on *Triple Tee Golf, Inc. v. Nike, Inc*., 511 F. Supp. 2d 676 (N.D. Tex. 2007), is inapposite because there the utter implausibility of plaintiff's evidence led the court to believe that plaintiff fabricated the purported assignment.

(2008) (citations omitted); *Hartford v. Glastonbury*, 561 F.2d 1032, 1051 n.3 (2d Cir. 1977) (en banc).

## II. *Res Judicata* Does Not Bar Plaintiffs' Claims

Wabtec renews on appeal its remarkable contention that—having successfully excluded Plaintiffs' claims from the Arbitration proceeding on the ground that they must be asserted in a separate action—this separate action is barred by *res judicata* because Plaintiffs' claims should have been resolved in the Arbitration proceeding. These self-serving arguments should not be countenanced by this Court.

The doctrine of *res judicata* precludes a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000) (citation omitted). Crucially—and dispositively—"[s]howing that the applicable procedural rules did not permit assertion of the claim in the first action of course also suffices to show that the claim is not barred in the second action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997) ("*[R]es judicata* is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action.").

The record could not be clearer that Plaintiffs did not and could not assert their claims, directly or otherwise, in the Arbitration as a result of Wabtec's actions: Wabtec asserted, and the Tribunal adopted, the argument that Malmö could not recover damages suffered by Plaintiffs. As the District Court properly and repeatedly found, *res judicata* has no application here.

## A. Wabtec is Judicially Estopped From Arguing *Res Judicata*

The purpose of judicial estoppel is to "prevent [ ] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." SA-12 (citing *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment . . . and prevents parties from playing fast and loose with the courts." *New Hampshire v. Maine*, 532 U.S 742, 750 (2001) (judicial estoppel is an equitable doctrine which "protect[s] the integrity of the judicial process"); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 94 n.3 (2d Cir. 2006) (same).

The Supreme Court has articulated three factors which "generally must be present" to establish judicial estoppel: (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that

27

either the first or the second court was mislead;" and (3) the party seeking to assert an inconsistent position must "derive an unfair advantage or the opposing party must suffer an unfair detriment if an inconsistent position is not estopped."  SA-12 (quoting *New Hampshire*, 532 U.S. at 749-51); *see also Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1249 (2010).

Each of these factors is satisfied here.  *First*, Wabtec argued in the Arbitration that (i) Plaintiffs' damages were not recoverable because Plaintiffs "ha[d] no standing in the proceedings" (JA-1785-96 (¶5.11.6.1));  (ii) Malmö was procedurally barred from bringing any claims on their behalf (JA-1792(¶5.11.2));  and (iii) "the Tribunal ha[d] no jurisdiction" to adjudicate the claims of other Faiveley entities.  JA-1795-98 (¶¶5.11.6., 5.11.6.1, 5.11.8.3).  Wabtec went so far as to argue that Plaintiffs *would not be barred by res judicata* from pursuing damages in a separate proceeding  (JA-1803 (¶5.11.8.20)) and pointed out that the adjudication of Plaintiffs' claims *could* and *should* take place in a different proceeding, acknowledging that because Plaintiffs were not participants in the Arbitration, "[a]ny right to damages for [their losses] must be determined according to the jurisdiction where each specific legal entity operates."  JA-1795-96 (¶5.11.6.1).

*Second*, the Tribunal adopted Wabtec's arguments, explaining that to decide otherwise could lead to a situation where Malmö received damages on behalf of

Plaintiffs "while these other entities would not be bound by the *res judicata* effect of the award and would still be entitled to claim damages against [Wabtec] before another jurisdiction." JA-3008 (¶882). The Tribunal thus ruled that it could only award damages to Malmö, even though it was "obvious" that "most" of the damage had been suffered by the other Faiveley entities. JA-3009 (¶887).

*Finally*, it would be grossly unfair to allow Wabtec, having successfully persuaded the Tribunal not to compensate Plaintiffs, to prevent Plaintiffs from being compensated here. Doing so would leave Plaintiffs without any remedy at all solely because Wabtec prevailed on each of its directly contradictory positions.

Wabtec does not, and cannot, dispute that its positions before the Tribunal and this Court are contradictory. Continuing its remarkable attempt to capitalize on its inconsistent positions, however, Wabtec asserts that judicial estoppel is inapplicable because the doctrine applies only to inconsistent *factual* positions and that its positions before the Tribunal were *legal*. Br. at 36-38. Wabtec also takes the absurd position, notwithstanding the clear Arbitration record, that the Tribunal did not "adopt" Wabtec's positions. *Id.*

The Supreme Court has not limited application of the doctrine of judicial estoppel to inconsistent legal positions. *New Hampshire*, 532 U.S. at 749; SA-13, n.3. Wabtec's reliance on its purported freedom to take inconsistent legal positions without consequence is meritless in light of the established flexibility of the

estoppel doctrine, and its purpose of shielding the courts from parties that seek to play "fast and loose." *Id.*; *New Hampshire*, 532 U.S. at 750; *see also HSBC Bank USA, Nat. Ass'n v. Adelphia Comms. Corp*., No. 07-CV-553A, 2009 WL 385474, at *18 (W.D.N.Y. Feb. 12, 2009) ("Courts have consistently applied the doctrine of judicial estoppel . . . to bar a party's claims or objections that are inconsistent with its prior legal position.").[12]  If ever there were a party playing "fast and loose," it is Wabtec here: in prevailing on its argument that Plaintiffs were barred from recovering damages in the Arbitration, Wabtec *expressly represented* that Plaintiffs could and should seek redress in a separate jurisdiction, only to turn around and insist before the District Court that it had no authority to hear their claims.  The inherent unfairness of Wabtec's position was recognized by the District Court: "Wabtec succeeded in shielding itself from plaintiffs' claims for damages in the

---

[12]   Courts have applied judicial estoppel to a wide variety of situations.  *See, e.g., Chance v. Board of Examiners*, 561 F.2d 1079, 1092 (2d Cir. 1977) (applying judicial estoppel where party signed consent decree and agreed to abolish original selection system and later attempted to revert back to original system); *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 122 (3d Cir. 1992) (applying judicial estoppel to prevent party who agreed to limit recovery amount to obtain a stay from seeking a further amount); *Murray v. Silberstein*, 882 F.2d 61, 66-67 (3d Cir. 1989) (applying judicial estoppel to prevent party from seeking damages, where party taking position that damages were not available won preliminary injunction as a benefit of position); *Karaha Bodas Co, LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 293-94 (5th Cir. 2004) (applying judicial estoppel against party that won a stay by arguing Swiss law applied and later sought to argue Indonesian law controlled).

arbitration by persuading the Tribunal that an alternate forum would be available to plaintiffs to assert these claims." SA-12.[13]

Wabtec's next contention, that the Tribunal did not "adopt[]" Wabtec's position, is flatly contradicted by the plain terms of the Award. The Tribunal observed that "Wabtec submits that the Tribunal does not have jurisdiction on the damage suffered by the other entities within the Faiveley group of companies. Any alleged damage these other entities have suffered is their own . . . and [they] have no standing in these arbitration proceedings." JA-2924(¶554). Wabtec further argued to the Tribunal that *res judicata* would not apply to entities that are not parties to the Arbitration. JA-1795-96, 1803 (¶¶5.11.6.1, 5.11.8.20). The Tribunal fully adopted Wabtec's position, ruling that:

> As a consequence, the Arbitral Tribunal considers that Faiveley Transport Malmö AB being the sole Claimant in this arbitration, it is only entitled to claim the damages that it has suffered itself . . . [T]o decide otherwise might lead to a situation where [Wabtec] might be condemned to pay [Malmö] damages suffered by other entities of [Malmö's] group, while these other entities would not be bound by the res judicata effect of the award and would still be entitled to claim

---

[13]   In any event, the foundation of Wabtec's *res judicata* claim—the issue of whether Plaintiffs are in privity with Malmö—is a *factual* rather than a legal determination. SA-13, n.3 (internal citations omitted); *Stichting Ter Behartiging v. Schreiber,* 327 F. 3d 173, 186 (2d Cir. 2003) (holding that privity is a factual determination); *Roode v. Michaelian*, 373 F. Supp. 53, 55 (S.D.N.Y. 1974) (same); *see also Transclean Corp. v. Jiffy Lube Int'l, Inc.,* 474 F.3d 1298, 1307 (Fed. Cir. 2007) ("[J]udicial estoppel may be applied to the question of privity, whether considered a legal conclusion or a question of fact," and applying judicial estoppel on basis that a party "should be held to the consequences of its choices.").

damages        against        Wabtec        before        another        jurisdiction.

JA-3008 (¶882); *see also* JA-3008 (¶883).

In sum, Wabtec attempts to do here exactly what the doctrine of judicial

estoppel was designed to prevent.   Wabtec's "heads I win, tails you lose"

gamesmanship should be firmly rejected by this Court.[14]

### B.   *Res Judicata* is Inapplicable Because Malmö was Barred from Adequately Representing Plaintiffs' Interests

Even if Wabtec were not judicially estopped from arguing that *res judicata*

barred Plaintiffs' claims in this action, Wabtec's substantive *res judicata* argument

is without merit.   The party against whom *res judicata* is asserted must have had a

"full and fair opportunity to litigate the matter in the proceeding that is to be given

preclusive effect."   *See EDP Med. Computer Sys., Inc. v. U.S.*, 480 F.3d 621, 626

(2d Cir. 2007).   Plaintiffs had *no opportunity* to litigate their claims before the

Tribunal.   As the District Court explained:

> [T]he tribunal expressly barred Malmö from either asserting claims or
> recovering damages on behalf of the instant plaintiffs in the
> arbitration.   Under the most elementary principles of *res judicata*, a
> "final judgment on the merits" only "precludes the parties or their
> privies from relitigating issues that *were or could have been raised in*

---

[14]     Wabtec errs in relying on cases where parties took positions that were not
contradictory or incompatible.   *See Troll Co. v. Uneeds Doll Co.*, 483 F.3d 150,
155 n.7 (2d Cir. 2007) (no judicial estoppel where theories "not necessarily
contrary to one another"); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d
113, 119 (2d Cir. 2004) (same); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d
384, 397 (2d Cir. 2001) (same). There was a square inconsistency in Wabtec's
positions.

>*that action*. . . . As the tribunal expressly precluded Malmö from
>recovering on Plaintiffs' behalf in the arbitration proceeding, a ruling
>which was in large part precipitated by Wabtec's representations to
>the tribunal that *res judicata* would not bar the Plaintiffs' from raising
>their claims in the instant action, *res judicata* poses no bar to those
>claims.

SA-35-36 (citing *Allen v. McCurry*, 499 U.S. 90, 96 n.8 (1980)) (emphasis in original).

Wabtec goes to pains to link Malmö and Plaintiffs, in an effort to establish privity between the parties based on the common "control" over these parties exercised by Faiveley Transport S.A. *See* Br. at 30-34. But the purpose of establishing privity in connection with a *res judicata* argument is to show that the non-party, by virtue of being in privity with the party to the prior action, "has in fact enjoyed a full and fair litigation" and therefore "has no more claim than a party to enjoy a second chance." Wright, Miller et al, 18A Fed. Prac. & Proc. Juris. § 4451 (2d ed.); *Usina Costa Pinto S.A. v. Louis Dreyfus Sugar Co.*, 933 F. Supp. 1170, 1176-77 (S.D.N.Y. 1996) (refusing to find privity between affiliate corporations where affiliate was not signatory to arbitration agreement, could not be compelled to arbitrate, and did not have interests represented in arbitration).[15]

Here, as the District Court properly found, Plaintiffs had no such full and

---

[15]     Wabtec argues that Malmö was "hand-picked" to initiate the Arbitration (Br. at 31), but the record belies this assertion: *Malmö* as successor-in-interest to SAB Wabco, was the signatory to the License Agreement and, the proper party to the Arbitration. JA-1794-95.

fair opportunity because the Tribunal specifically and expressly barred Malmö from asserting these claims:

> While Wabtec marshals a wide array of evidence from the summary judgment record to support its formulaic contention that the Plaintiffs and Malmö are 'in privity' with one another, or 'share a commonality of interests,' nothing in the summary judgment record negates the obvious point that the tribunal expressly barred Malmö from either asserting claims or recovering damages on behalf of the instant plaintiffs in the arbitration. . . .

SA-35 (citations omitted). Wabtec's efforts to prevent Plaintiffs from having their claims heard should be summarily rejected. *See Conte v. Justice*, 996 F.2d 1398, 1402 (2d Cir. 1993) (*res judicata* inapplicable where plaintiff "ha[d] yet to have her day in court").

Finally, Wabtec's argument that the Tribunal adjudicated the Plaintiffs' claims on the merits (Br. at 35-36) is nonsensical. The Tribunal expressly ruled it could not hear Plaintiffs' claims, and recognized that the claims would have to be brought in a different jurisdiction. *See* JA-3008 (¶¶881-82) (other Faiveley entities "would still be entitled to claim damages against [Wabtec] before another jurisdiction"); JA-3008 (¶883) ("the damages invoked by [Malmö] have primarily occurred on the US market"); JA-3012 (¶896) (amount of damages awarded to Malmö "exclu[des] the damages likely to have been suffered by other companies of the Faiveley group").

Indeed, Plaintiffs' claims were specifically reserved for this proceeding. *See*

34

*id.*; *U.S. v. Woodcrest Nursing Home*, 706 F.2d 70, 79 (2d Cir. 1983) ("[N]othing could be clearer than the fact that the arbitrators' award was not a final determination of the rights" in connection with a claim that the tribunal did not hear and stated could be brought later); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (noting that *res judicata* is inapplicable where "the initial forum did not have the power to award the full measure of relief sought in the latter litigation" or where "formal jurisdictional or statutory barriers" prevented plaintiff from presenting its claims including theories of recovery or demands for relief). If any merits determination can be read into the Award, it is that Plaintiffs are *entitled* to the damages award they obtained in this action.

## III. The Jury's Damages Award Is Well-Supported By the Evidence and There is No Basis for New Trial or Remittitur

Wabtec renews its arguments, made and lost in its post-trial motion, that the jury's award should be remitted or a new trial granted. Wabtec's burden in establishing its entitlement to a new trial or remittitur is high, because substantial deference is accorded a jury verdict on the issue of damages and the District Court's denial of a motion for new trial and remittitur is reviewed for abuse of discretion. *See Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993); *Rangolan*, 370 F.3d at 245.

The calculation of damages is the "province of the jury," *see Blissett v. Coughlin*, 66 F.3d 531, 536 (2d Cir. 1995), and a court may not substitute its

35

judgment for that of a jury. *See Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 566–67 (2d Cir. 1988) ("As a reviewing court, we are not permitted to vacate or reduce a jury award merely because we would have granted a lesser amount of damages"). In assessing the sufficiency of evidence to support a jury verdict, the Court "may not itself weigh the credibility of witnesses or consider the weight of the evidence," and "must give deference to all credibility determinations and reasonable inferences of the jury." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998).

As explained above, the jury was instructed to determine both unjust enrichment damages and lost profit damages. After considering the substantial evidence presented by Plaintiffs and Wabtec, the jury alternatively awarded Plaintiffs $18.1 million in damages for unjust enrichment and $14.5 million in lost profit damages. JA-760-61 (997:3-1000:21).

Wabtec finds fault specifically with Plaintiffs' ability to seek damages for Wabtec's continuing use of its tainted reverse engineered drawings after the date of the Award, and further asks that the jury's damages award be reduced to reflect the $4.1 million award to Malmö. Wabtec fails to meet the high burden required to establish that it is entitled to a new trial or remittitur of the damages award.

36

## A. Plaintiffs are Entitled to Damages Sustained After the Date of the Arbitration Award

Wabtec points (or rather, clings) to the Tribunal's decision not to issue an injunction as "evidence" that Wabtec was expressly authorized to use its tainted reverse engineered drawings without any damages or penalty. Wabtec's argument regarding Plaintiffs' ability to recover damages, absent an injunction, is disingenuous at worst and erroneous at best.

Far from precluding an award of damages, to the extent that the denial of the injunction is relevant here, it *supports* the award of damages. *See, e.g., E.E.O.C. v. Everdry Mktg. and Mgmt., Inc.,* 348 Fed. Appx. 677, 679 (2d. Cir. 2009) (upholding denial of injunctive relief and award of compensatory damages); *Boisson v. Banian Ltd.,* 280 F. Supp. 2d 10, 18-19 (E.D.N.Y. 2003) (awarding lost profit damages where injunction was not granted). In the Arbitration, the Tribunal's very rationale for not enjoining future use of the tainted "reverse engineered" drawings was its determination that monetary damages are the appropriate remedy. JA-3013 (¶902); SA-30, n.1; *see also Goldblatt v. Englander Commc'ns, LLC*, 431 F. Supp. 2d 420, 424 (S.D.N.Y. 2006) (denying injunctive relief where monetary damages were adequate to remedy harm).

Indeed, this Court concluded that injunctive relief pending the Arbitration was unnecessary because damages would compensate for any harm suffered by Malmö. *Faiveley II* at 119-21. Just as the denial of injunctive relief by this Court

37

does not preclude an award of damages, the denial of injunctive relief by the Tribunal does not preclude damages here. As the District Court explained, "[t]he record is clear . . . that the tribunal found that Wabtec's reverse engineered drawings were 'tainted,' but refrained from enjoining their use because it found that monetary damages were adequate to remedy the harm suffered . . . ." *See* SA-30, n.1 (*citing* ¶902).

Finally, there is no evidence that the damages awarded by the Tribunal were limited to *past* harms. To the contrary, the Tribunal's discretionary assessment was expressly based in part on projected *future* royalties. JA-3012-13 (¶¶896, 902).

In fact, as the evidence at trial established, there is a significant need for future compensation, because Wabtec *continues* to use and profit from its tainted drawings with full knowledge of the Tribunal's and the District Court's holdings that Wabtec's use of these trade secrets and other information is illegal. Robert Dezzi, Wabtec's Passenger Transit Division's Vice President and General Manager, confirmed at trial that Wabtec *has never* stopped using the results of the tainted reverse engineering process that the Tribunal found to be tainted by Wabtec's misappropriation. JA-459, 461 (306:12-18; 313:5-9). That is, even after the Arbitration, Wabtec is still using the *same* tainted drawings to manufacture the Brake Products and obtain profitable contracts at Plaintiffs' expense. *Id.* Thus the

38

factual record, and common sense, foreclose Wabtec's argument that "Wabtec's misappropriation had been undone and had ceased." Br. at 41; *see also* Br. at 43-44. Wabtec's request to "deduct" from the jury's award all damages accrued after the date of the Award is therefore entirely unfounded, and the District Court was well within its discretion to deny a new trial and remittitur on this basis.

### B. Wabtec's Payment of $4.1 Million to Malmö Pursuant to the Final Award Does Not Impact Plaintiffs' Entitlement to Damages or Support Remittitur

In its next attempt to avoid the jury's damages verdict, Wabtec argues that $4.1 million, the amount awarded to Malmö, should be deducted from the amount awarded to Plaintiffs.[16] Wabtec's argument is fundamentally flawed.

As the District Court acknowledged, the Arbitration Award was limited to the damages suffered by *Malmö,* which are separate and divisible from the harm suffered by Plaintiffs. SA-18-19. The Tribunal itself recognized this fact, expressly noting that the $3.9 million discretionary award "covers the totality of the damage suffered by [Malmö] itself, *at the exclusion of the damage likely to have been suffered by other companies of the Faiveley group*." JA-3012 (¶ 896)

---

[16] The $4.1 million amount referenced includes the approximately $200,000 in interest paid by Wabtec on the $3.9 million discretionary award. Wabtec offers no support – nor does any exist – for the proposition that the amount of interest paid could possibly be included in its request to reduce the jury's award. By Wabtec's logic, had it waited to pay the amount owed to Malmö, and allowed additional interest to accrue, it would be allowed to subtract that additional amount from the jury's award. Such a position is plainly inequitable.

(emphasis added). The Tribunal further recognized that those entities would pursue claims for *their own* damages in separate proceedings in other jurisdictions. JA-3008-09 (¶¶882-83, 887).

Furthermore, Wabtec's request for this reduction is premised on the notion that the damages awarded by the Tribunal constituted disgorgement of Wabtec's profits. But by Wabtec's own admission, the Tribunal did not award disgorgement damages to Malmö. JA-1498, 1511-12 (at 5, 18-19).

Certainly there is no basis whatsoever for characterizing the Award as a disgorgement of all of Wabtec's worldwide ill-gotten profits. In presenting its case for damages in the Arbitration, Malmö proposed three alternative methods of damages analysis for the Tribunal's consideration: (1) the amount of the loss Malmö suffered as a result of Wabtec's conduct; (2) the amount of Wabtec's profit; or (3) a discretionary amount to be determined by the Tribunal. JA-2853 (¶¶266-67). The Tribunal, persuaded by Wabtec's argument that it did not have jurisdiction to adjudicate the claims of any Faiveley entity other than Malmö, barred Malmö from either asserting claims or recovering damages on Plaintiffs' behalf. JA-3008 (¶¶882-83; 896). As a result of that decision, Malmö's proffered damages calculations under methods (1) and (2)—which included the harm suffered by all Faiveley entities—were no longer applicable. JA-3010 (¶889). The Tribunal therefore chose the third of the three damage calculation options, and

arrived at a "discretionary assessment" in the amount of $3.9 million to compensate Malmö for the harms it suffered. JA-3010, 3012 (¶¶889, 896)

In arriving at this discretionary amount, the Tribunal applied a chosen royalty rate for a past and future period and specifically and intentionally excluded the damage suffered by other Faiveley entities. JA-3010, 3012 (¶¶889, 896) In so doing, the Tribunal specifically did *not* attempt to calculate Wabtec's ill-gotten gains.[17] The District Court therefore acted well within its discretion not to reduce the jury's award.

## IV. None of the District Court's Evidentiary Rulings Come Close to Justifying a New Trial

Wabtec asserts that a number of the District Court's evidentiary rulings require vacating the jury verdict and ordering a new trial. Specifically, Wabtec finds error in the court's (a) admission of evidence regarding "legally unrecoverable" lost profit damages; (b) allowance of the jury's treatment of the Plaintiffs "as one entity" for the purpose of analyzing lost profits; and (c) exclusion of one of Wabtec's experts, Dr. Badawy. Br. at 49-59.

The trial court is accorded broad discretion over the admission of evidence. *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 165 (S.D.N.Y. 2003). A new trial based

---

[17] Additionally, the relevant provision of Swedish Trade Secrets Act—which governed the Award—provides that "when assessing the amount of damages [for trade secret misappropriation], consideration shall also be given . . . *to circumstances other than purely economic circumstances*." JA-3004(¶869) (emphasis added).

on the admission or exclusion of evidence is appropriate *only* where the party challenging the district court's evidentiary determination shows that it "was a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that [the court is] convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997) (internal quotation omitted); *see also In re Martin-Trigona*, 760 F.2d 1334, 1344 (2d Cir. 1985) (evidentiary rulings not disturbed unless "manifestly erroneous"). Wabtec has failed to show that the District Court abused its discretion in any way, let alone that the District Court's decisions prejudiced the outcome of the trial such that there was a miscarriage of justice.

## A. There Was No Prejudicial Error in Allowing Evidence of Post-Award Damages and Damages Based on Lost Contracts with NYCT

In a reprise of its argument that Plaintiffs are not entitled to post-Award damages as a matter of law based on the Tribunal's findings, Wabtec claims prejudicial error in the "admission of these post-Award damages." Br. at 50. As detailed above, Plaintiffs *are* entitled to post-Award damages. *See supra* Section III. The District Court's admission of evidence in connection with these aspects of Plaintiffs' damages claims was proper, and Wabtec was not prejudiced. *See Am. Nat'l Fire Ins. Co. v. Mirasco*, 451 F. Supp. 2d 576, 585 (S.D.N.Y. 2006).

Wabtec also reasserts its argument that the admission of evidence related to lost profits based on lost sales to NYCT was improper. The record makes clear, however, that NYCT had a constant need for the Brake Products (*see* JA-12633-34, 12642 (35:20-24; 36:13-19; 114:4-12); JA-457 (296:6-297:8)) and, absent Wabtec's misappropriation, Plaintiffs would have necessarily supplied those Products, because Plaintiffs *were the only other available source*. JA-450-451, 530 (270:18-271:3, 443:14-444:7) (Wabtec is Plaintiffs' only competitor for the sale of relevant Products in the U.S.); *see also* JA-429-430 (186:11-18, 189:18-190:5) (Wabtec could not have supplied parts to NYCT absent misappropriation); JA-540 (482:25-483:22) (Plaintiffs would have been the only entities able to supply NYCT if Wabtec had exited the market).

Indeed, absent Wabtec's misappropriation and unfair competition, NYCT would have *had* to purchase the Brake Products from Plaintiffs (or require Wabtec to continue to source the Brake Products from Plaintiffs, as Wabtec had done in the past) in order to keep the transit system running. *See, e.g.,* JA-12633-34, 12642 (35:20-24; 36:13-19; 114:4-12); JA-457 (296:6-297:8); JA-450-451, 530 (270:18-271:3, 443:14-444:7); JA-429-430 (186:11-18, 189:18-190:5); JA-540 (482:25-483:22). Accordingly, there was nothing erroneous about admitting evidence regarding these lost profits. *See Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985) (affirming award of lost profits for misappropriation

43

where plaintiff and defendant were the only companies capable of producing products at issue, such that defendant's sales "[o]bviously came at the expense of the [plaintiff]").

Moreover, in sharp contrast to cases on which Wabtec relies, here there was a concrete basis for calculating the NYCT lost profits based on a record of *actual* sales. *Compare Toltec Fabrics, Inc. v. August Inc.*, 29 F.3d 778, 780 (2d Cir. 1994) (reversing damage award for loss of "goodwill" due to insufficient proof that any loss of goodwill was caused by breach, and amount of loss was speculative) and *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 262 (1986) ("multitude of assumptions required" to "project profitability" required "speculation and conjecture") *with* JA-429-430, 540 (186:19-25, 482:25-483:22; 188:18-19; 188:20-23) (establishing Wabtec made $6 million on NYCT contract). Further, Wabtec's own internal future sales predictions included sales to the NYCT. JA-13449-50.

Because there was concrete evidence of actual, rather than projected, losses it is more than reasonable to assume that Plaintiffs would have made those sales in the absence of Wabtec's misappropriation. Accordingly, there was no error, let alone an abuse of discretion, in allowing the jury to consider evidence of those losses. *See Am. Fed. Grp., Ltd. v. Rothenberg,* 136 F.3d 897, 913 (2d Cir. 1998) (affirming damages award and observing that "in many cases, the most probative evidence of lost profits may well be . . . direct evidence of earnings specifically

44

diverted from a claimant by culpable conduct of another which, but for the diversion, would have come to the claimant").

### B. There was No Error in the Court's Other Rulings Regarding Plaintiffs' Damages Evidence

Wabtec claims that the District Court erred by permitting Plaintiffs "to make their claim for lost profits without insisting on proof particularized to each Plaintiff" of what "*its* specific costs" would have been and what net profits it would have made. Br. at 51. This argument can only be described as a red herring.

As the District Court correctly found, "plaintiffs collectively, presently, possess the exclusive license to manufacture, use, sell, and market the Brake Products in North America." SA-28; *id.* at 44 ("[C]ollectively [Plaintiffs] have such exclusivity."). Each of the lost sales therefore necessarily was a sale lost by one of the Plaintiffs.

As Plaintiffs' damages expert, Dr. Putnam, explained, "[I]t's only an accident of this case that there are different legal entities . . . which happen to be different manufacturing plants. In a typical case, the plaintiff would be a unified legal entity with different manufacturing locations and it's not required to specify which particular plant the plaintiff's products would have been manufactured by as long as you've accounted properly for the costs." JA-15281-83 (54:19-55:14; 55:15-56:7). Whether Ellcon would have manufactured BFCs and subsequently

sold them, or would have distributed BFCs produced by Faiveley Nordic to North American customers *is economically irrelevant*. *See* JA-15284 (57:4-10) (separation of damages by plaintiff is irrelevant "for economic purposes. As long as you collectively joined all the people that suffered the harm it doesn't make any difference which plant, in effect, suffered the harm").

Given that the trade secrets and other protected information are possessed collectively by Plaintiffs, and *only* by Plaintiffs, and the coordinated manufacturing and sales structure put into place for the sale of the Brake Products in the North American market, it was proper for Plaintiffs' lost profits damages model to be built upon analysis of the sales that Plaintiffs together would have made but for Wabtec's misappropriation and continuing unfair competition. *See Electro-Miniatures Corp*, 771 F.2d at 27.

Wabtec's argument is yet another effort to deny Plaintiffs the relief to which they are entitled, based on distinctions without meaningful difference and a misunderstanding of the law. Indeed, Wabtec fails to cite any authority in support of its argument that, in a case involving related plaintiffs, all of whom have undoubtedly suffered harm as a result of the defendant's actions, damages must be separated out by each plaintiff. *Cf. Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F. Supp. 1069, 1073 (S.D.N.Y. 1971) (awarding a single amount of

damages to separate plaintiffs involved in joint venture "presumably to be divided among the plaintiffs according to their respective interests in the venture.").

Wabtec also objects to Plaintiffs' use of Wabtec's costs and profits as a proxy for their own, based on a supposed lack of foundational testimony establishing that Plaintiffs are capable of competing "on Wabtec's level and earning the profits that it did." Br. at 52-53. At trial, however, Plaintiffs fully explained to the jury why Wabtec's standard costs were an adequate proxy for calculating lost profits. *See* JA-554-59 (559:3-561:5) (citing, among other reasons, that parts, though sold in different configurations, are the same, as are labor and material costs). Furthermore, Wabtec's *own analysis* acknowledged that Plaintiffs' costs, global presence, and capability are superior to Wabtec's. *See* JA-4408; JA-4550. Thus, if there is any meaningful discrepancy between Wabtec's and Plaintiffs' costs and profits, it has resulted in a damages award that is too low.

In sum, the established record in this case demonstrates that but for Wabtec's misappropriation, Plaintiffs – with collective possession of the exclusive rights to manufacture and sell the Brake Products in the North American market – could and would have configured their manufacturing and marketing efforts to make the sales of the Brake Products at issue in this case. There is, accordingly, no basis for vacating the jury's damages verdict.

### C. The Court Properly Excluded the Testimony of Wabtec's Reverse Engineering Expert, Dr. Aly Badawy

Wabtec claims that the District Court erroneously and prejudicially excluded one of its three proffered experts, Dr. Badawy, who opined that the Brake Products could be reverse engineered without knowledge of the trade secrets in 18-24 months, and that any future recovery by Plaintiffs should be limited to such period. Br. at 54. "The qualification of expert witnesses and the scope of their examination lie within the sound discretion of the trial court, the exercise of which must be sustained unless manifestly erroneous." *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 338 (2d Cir. 1993). There is no error, let alone manifest error, in the District Court's exclusion of Badawy, and thus no basis for a new trial.[18]

Courts impose strict standards on expert testimony because improper expert testimony carries the danger of prejudicing the jury. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) ("[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."). Accordingly, courts within the Second Circuit "have not hesitated to exclude [an] expert's testimony at trial" where it fails to meet the governing standards. *Johnson Elec. N.*

---

[18] While Wabtec now characterizes Dr. Badawy as a "damages" expert, it is undisputed that Wabtec was permitted to present a damages expert, Mark Gleason, as well as G. Leslie Elliott, an additional expert related to Plaintiffs' ability to serve the market. JA-628-56 (691:15-804:6); JA-656-81 (804:7-902:6).

*Am., Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 279 (S.D.N.Y. 2000); *see also Amorgianos v. Nat'l R.R. Passenger Corp,* 303 F.3d 256, 267 (2d Cir. 2002) ("[A]ny step that renders [an expert's] analysis unreliable under the Daubert factors renders the expert's testimony inadmissible."). The District Court properly exercised its gate-keeping responsibilities to exclude Badawy's testimony because it was neither relevant nor reliable, and inevitably would have been prejudicial.

### 1.  Badawy's Testimony Was Irrelevant

Wabtec now asserts that Badawy's testimony went to issues including "(1) how long it would take to reverse engineer Plaintiffs' [Brake Products] and, therefore, (2) when future damages should be cut off based on the projected date of reverse engineering completion."  Br. at 54.

Expert testimony must fit the facts and issues of a case in order to be relevant.  *Daubert,* 509 U.S. at 591.  Badawy's testimony did not fit in this case because, incredibly, he disputed the underlying liability determinations that had been made by the Tribunal and the District Court—determinations that were not subject to review by the jury and thus not proper subjects of evidence at trial. Moreover, his hypothetical analysis was expressly refuted by the facts of what *actually* took place.  The District Court's exclusion of Badawy's testimony was therefore entirely proper.

a.    Badawy's "Opinions" on Conclusively Established Legal Issues Were Irrelevant and Improper

The District Court granted Plaintiffs' motion for summary judgment on trade secret misappropriation, unfair competition, and unjust enrichment, leaving for trial only the issue of damages. SA-50. Even though Wabtec's liability therefore was not an issue of fact for the jury, Wabtec proffered Badawy's "expert opinion" on the already-resolved foundational liability issues.

Badawy's deposition testimony was rife with conclusions that Faiveley's manufacturing drawings did not constitute trade secrets, and that the Tribunal and District Court were incorrect in determining liability. *See, e.g.,* JA-12979 (51:22-52:16) ("I don't agree about what the Tribunal called trade secrets . . . There was [sic] no trade secrets."); JA-12989 (61:24-62:20) ("It is not right when I see in front of me somebody saying manufacturing drawings and there is not [sic] manufacturing information, none whatsoever involved. It is wrong [ ]."); JA-13029 (130:6-17) ("Q: Are you aware that Judge Rakoff found such information does constitute trade secrets? A: I read it here. Apparently he did, but I don't agree with him. I don't."); JA-12977 (50:2-16) ("I told you I disagree even about [the Tribunal's] conclusion that the process is slightly tainted. I disagree, yes."); JA-13000 (82:10-25) ("I disagree with so many [of the Tribunal's findings] that are not right. They are unfair. They are not true."); JA-12997 (77:12-15) ("[t]o me that is clear evidence, as clear as the sun, that there was not tainting intentionally or

unintentionally by Mr. Moore."); JA-12351 (¶23) ("Notwithstanding the Arbitration Tribunal's finding . . . the documentation that I reviewed and my investigation did not indicate to me that Wabtec's employees used SAB Wabco's drawings or Wabtec's original drawings or the information on those drawings in the reverse engineering process."); JA-12357 (¶40) ("I have no doubt in my mind that this manufacturing process . . . is owned and developed by Wabtec. There was no shred of evidence that this process was copied from any other manufacturer, i.e., SAB Wabco or Faiveley."); JA-12357 (¶42) ("I concluded that there was no copying of Faiveley's product engineering drawings by Wabtec.").

Badawy's disagreements with the liability determinations reached by the Tribunal and the District Court clearly have no place in an expert report or expert testimony offered on the subject of the proper calculation of damages.[19] Badawy's opinions that Plaintiffs did not have any trade secrets in the Brake Products, and that Wabtec did not misappropriate any trade secrets, were clearly not relevant to any "core issue" in the trial, and would have severely prejudiced the jury. Thus Badawy's opinion "on what is right and what is wrong" (JA-12988 (61:12-18)) was properly excluded. *See Daubert*, 509 U.S. at 595.

---

[19]    Badawy himself did not understand (or simply disregarded) the purpose and relevance of his testimony in light of the established findings. JA-13017 (103:4-21) (Q: My question is, disconnected from the facts of this case, as you state yourself you have done, what is the purpose of that opinion for this case? A: I have no idea. I can't answer your question. I have no—I don't know what to tell you.").

b.    Badawy Failed to Consider Outcome-Determinative Facts

An expert's analysis does not fit the case, and is therefore inadmissible, when it fails to take into account relevant facts that are part of the record.  *See, e.g., Johnson Elec.*, 103 F. Supp. 2d at 280 (excluding expert's analysis as irrelevant because it failed to take into account "outcome determinative facts").  Although the record here is replete with judicially-established facts regarding Wabtec's misappropriation, its failed outside reverse engineering efforts, and its tainted in-house reverse engineering process, Badawy considered *none* of these facts when preparing his opinions, rejecting all of them out of hand.

Badawy's opinion on the length of time Wabtec would need to cleanly reverse engineer the Faiveley Products was as follows:

> *Putting aside Wabtec's actual reverse engineering process*, . . . , it would likely take 1.5 to 2 years to reverse engineer and produce complete BFC, PB, and PBA products if an experienced brake manufacturer or supplier were to attempt to reverse engineer and produce such products . . . .

JA-12358 (¶ 43) (emphasis added).   But the problem is that Badawy was not entitled simply to "put aside" the actual (albeit inconvenient) facts in the case relevant to this issue.   In considering how long it would take Wabtec to reverse engineer the Brake Products without misappropriation, it is of central significance that Wabtec engaged in multiple failed attempts to reverse engineer the Brake

52

Products *since 2005*, with the assistance of several different independent firms that specialize in reverse engineering, and that it was only through the misappropriation of Faiveley's trade secrets and the assistance of Roland Moore that any progress was made. *See* JA-2985 (¶796); *Faiveley I* at 406; SA-30-31.[20]

Badawy, however, considered these facts "irrelevant." *See* JA-13006 (88:21-25) (acknowledging that time Wabtec has spent on reverse engineering was "more than my estimate"); JA-13024 (118:17-25) ("Q: And the fact that [Wabtec] didn't [take two years to reverse engineer and produce all the parts], how does that impact what you have assumed in your estimates? A: It doesn't impact anything. It—how could it impact my estimate?").

This deliberate disregard of facts that are directly relevant to his analysis renders Badawy's opinions irrelevant and improper. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21-22 (2d Cir. 1996) (excluding testimony where proffered expert failed to consider relevant economic facts relating to plaintiff and instead hypothesized ideal scenario for damages analysis); *Barrett v. Black & Decker*, No. 06 Civ. 1970, 2008 WL 5170200 at *7 (S.D.N.Y. Dec. 9, 2008) (excluding expert testimony based on unrealistic and contradictory assumptions).

---

[20] Wabtec's witnesses testified that Wabtec has not attempted to perform a "clean" reverse engineering process following the Tribunal's 2009 determination that Wabtec misappropriated Faiveley's trade secrets and that Wabtec's reverse engineering process was tainted. Wabtec continues to use the tainted reverse engineered drawings to this day. JA-459, 461 (306:12-18; 313:1-9); SA-30.

On this basis alone, Badawy's analysis was rightly excluded. *See Boucher,* 73 F.3d at 21-22 (excluding expert testimony that was not accompanied by a sufficient factual foundation); *see also Dallal v. New York Times Co.*, 352 Fed. Appx. 508, 512 (2d Cir. 2009) (finding no abuse of discretion in district court's exclusion of two expert witnesses' testimony); *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (affirming summary judgment where district court did not consider "entirely conclusory" expert testimony).

### 2.    Badawy's Testimony Was Unreliable

Even if Badawy's testimony were relevant (which, as demonstrated above, it was not), it was properly excluded as completely unreliable.  The fact that Badawy's conclusion is directly controverted by the facts of the case by itself demonstrates its unreliability:  his opinion amounts to a useless prediction of what would likely occur in a case where the underlying facts were different than they are here.  *See Lynch v. Trek Bicycle Corp.,* 374 Fed. Appx. 204, 206 (2d Cir. 2010) (expert testimony is unreliable where expert merely testifies as to what "could have happened").

Wabtec asserts that Badawy "applied a sound methodology in light of his extensive experience."  Br. at 55.  But for expert testimony to be reliable, the method of analysis must be *objectively testable* and *actually tested* by the expert.

*See Daubert*, 509 U.S. at 593. According to Wabtec, Badawy's methodology consisted of (1) examining the parts that went into each product, assessing which could be obtained "off the shelf" and which were custom parts needing to be reverse engineered; (2) estimating that it would take half a day to reverse engineer each off-the-shelf part, and determining that it would take a total of three days for each custom part; and (3) calculating the length of the total process. *See* Br. at 55-56. To the extent this constitutes a "testable methodology," it is plainly flawed: Badawy offers no discernable or logical basis for his uniform estimation that each off-the-shelf part would take half a day to reverse engineer and each custom part would take a total of three days to reverse engineer, regardless of their size and complexity.

Indeed, it is clear that Badawy has no legitimate basis for such blanket estimations other than his opinion that "[i]t *never* takes more than two to three years to do something from scratch, let alone reengineer it." JA-13025 (119:6-9). In other words, *no matter what* Wabtec asked Badawy to analyze, he was never going to suggest a reverse engineering period longer than three years. His 1.5 to 2-year guesstimate with respect to the Brake Products is just a midpoint between zero and the 3-year maximum he believes applies to *any* reverse engineering project.

This opinion is obviously not the result of the application of an objective methodology; there is no science, empirical evidence, or research behind it.

55

Instead, Badawy's entire support for his opinion comes from his limited anecdotal experience in the automotive industry. JA-12959-60, 12969 (7:20-8:21; 25:14-23). Badawy's opinion amounts to no more than his own say-so and is patently unreliable. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Berk v. St. Vincent's Hosp.,* 380 F. Supp. 2d 334, 354-55 (S.D.N.Y 2005) ("An anecdotal account of one expert's experience . . . does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community.").

Further evidence of the inadmissibility of Badawy's "junk science" is provided by the undisputed fact that even though Wabtec satisfied all Badawy's listed requirements, it nonetheless failed to yield the result he predicted. Badawy's report states that the following are required to reverse engineer the Brake Products in 1.5 to 2 years: (1) "an experienced brake manufacturer or supplier;" (2) "a physical copy of each of the three units" (the Brake Products at issue); (3) "publically available materials such as product manuals and part lists;" (4) "one reverse engineering team consisting of experienced engineers" (as listed in Exhibit F of his Report). *See* JA-12358 (¶43). According to Badawy's analysis of Wabtec's reverse engineering process, Wabtec had the benefit of, and utilized,

each of these four elements. *See, e.g.,* JA- 12351, 12356-59 (¶¶ 23, 38-39, 44). Yet Wabtec has been unable to reverse engineer a single complete Product in *triple* Badawy's "conservative estimate" of how long it should have taken Wabtec to reverse engineer the Brake Products. JA-13018 (104:13-18).

Badawy's guesswork about the reverse engineering process is not a legitimate substitute for analysis of what has actually occurred – and it is certainly not an "objectively testable methodology." *See, e.g., Daubert*, 509 U.S. at 593; *Lynch*, 374 Fed. Appx. at 206 (excluding expert's speculative and untested theories regarding the cause of an accident). Rather, he combined broad baseless generalizations with a complete disregard of reality to arrive at his conclusion. *See, e.g.*, JA-12350-51 (¶21) ("In the train brake industry, like the automotive brake industry, the parts are essentially simple metallic parts that can be readily and easily reverse engineered."); JA-13009-10 (91:23-92:7) ("What [Wabtec] did is irrelevant, as far as I'm concerned"). Thus, the District Court acted well within its discretion—and indeed, upheld its affirmative obligation—by excluding Badawy's testimony. *See Boucher*, 73 F.3d at 21-22.

### 3. The District Court's Summary Exclusion Ruling Does Not Create an Independent Ground for Reversal

Wabtec makes much of the fact that the District Court excluded Badawy's testimony in a summary decision, asserting that it compels reversal on the ground that there is "no indication that [the Court] carried out its gatekeeping duty." Br. at

57

57.  But this argument can easily be disposed of, because this Court does not require a district court make specific findings on the record when deciding to exclude improper expert testimony.  *See, e.g., U.S. v. Gallo*, 33 Fed. Appx. 542, 544 (2d Cir. 2002) ("While it is obviously more helpful when the district court provides a clear analysis of the 403 factors, it is not required to do so explicitly where, as here, it is evident from the record that the court conducted the necessary balance."); *U.S. v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (not mandatory for "the district court [to] make specific findings on the reliability of the materials the experts use.  Instead, we assume that the district court consistently and continually performed a trustworthiness analysis *sub silencio* of all the evidence introduced at trial.").  Wabtec's reliance upon cases from other jurisdictions is therefore misplaced.[21]

There can be no doubt in this case that the District Court properly fulfilled its gatekeeping duty.[22]  As detailed above, the record makes completely clear why Badawy's proffered testimony was irrelevant, unreliable and prejudicial—and why the improper nature of the testimony was clear to the District Court.  In view of the

---

[21]    Wabtec's reliance upon *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) is accordingly misplaced.  Br. at 57.

[22]    Indeed, the record confirms that the District Court took its gatekeeping role quite seriously, holding *Daubert* hearings for two of Wabtec's expert witnesses where questions remained after the parties' thorough briefing.  JA-475-92 (Tr. 377:2-435:11).

overwhelming justification for the District Court's ruling, this Court should have no trouble ascertaining the permissible basis for that ruling – indeed, there was no permissible basis for Badawy's testimony to be presented to the jury. There was certainly no abuse of discretion that could justify a new trial.

## CROSS APPEAL

## I. The District Court Erred in Striking Plaintiffs' Punitive Damages Claim

In the face of the substantial evidence of Wabtec's willful and wanton trade secret theft and disregard of its obligations under the law, the District Court erred by striking Plaintiffs' claim for punitive damages on the ground that no reasonable jury could find that Wabtec's conduct warranted punitive damages under New York law. The record establishes that Plaintiffs are entitled to punitive damages— or at the very least, that the jury should have decided that question.

The District Court's refusal to submit the issue of punitive damages to the jury is reviewed *de novo,* viewing the evidence in the light most favorable to Plaintiffs. *See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006); *Therrien v. Target Corp.*, 617 F.3d 1242, 1259 (10th Cir. 2010) (refusal to submit punitive damages to the jury "review[ed] *de novo*" where "evidence, viewed in the light most favorable to the plaintiff, would support a jury award of punitive damages"). The District Court's decision should be reversed and remanded to allow Plaintiffs to try their punitive damages claim to a jury.

59

## A. Trade Secret Misappropriation is an Egregious Tort, That Often Warrants Punitive Damages

New York law provides for punitive damages where the defendant's conduct "evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Ross v. Louise Wise Servs.*, 8 N.Y.3d 478, 489 (2007). As the District Court observed, there is a "hybrid nature" of punitive damages, blending the punitive and deterrence functions of criminal penalties with the compensatory aspects of civil remedies. JA-586-587 (669:14-19). These "hybrid" damages are particularly suited to torts that are near-criminal in nature.

Trade secret misappropriation is just such a tort. The rule delineated in the Restatement of Torts—regularly cited by New York courts as the basis for the tort of misappropriation— "rests not upon a view of trade secrets as physical objects of property but rather upon abuse of confidence or impropriety in learning the secret." *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 267 (S.D.N.Y. 2005) (citing Restatement of Torts § 757 cmt. b (1939)). "Therefore, damages are not necessarily awarded simply to compensate the aggrieved party, but also to punish the egregious offender and deter future offenders." *Id.*; *see also Metron Tech. Distrib. Corp. v. Discreet Indus. Corp*., 189 Fed. Appx. 3, 4 (2d Cir. 2006) (characterizing misappropriation of trade secrets as "theft" and upholding award of punitive damages).

Accordingly, New York courts have consistently awarded punitive damages in cases of trade secret misappropriation where there is evidence of willfulness. *See, e.g., Paz Sys., Inc. v. Dakota Grp. Corp.*, 514 F. Supp. 2d 402, 409 (E.D.N.Y. 2007); *In re Cross Media Mktg. Corp.*, 06 Civ. 4228, 2006 WL 2337177, at *7 (S.D.N.Y. Aug. 11, 2006); *Softel, Inc. v. Dragon Medical and Scientific Commc'ns Ltd.*, 891 F. Supp. 935, 945-946 (S.D.N.Y. 1995), *aff'd in relevant part*, 118 F.3d 955 (2d Cir. 1997). For example, in *Softel*, the court found that the plaintiff was entitled to punitive damages on its trade secret misappropriation claim because the "defendants' conduct was willful and in bad faith" by using the plaintiff's trade secret computer source code beyond the scope of the project for which they had paid, and despite the copyright notice inserted into the code. 891 F. Supp. at 945. In *Paz*, the plaintiff's key employee copied important computer files onto his private computer, and then used the files in subsequent employment with a competitor—misappropriation that the court found to be "particularly egregious" because it was "calculated," with defendant going to considerable lengths to hide his acts, including destroying evidence. 514 F. Supp. 2d at 409. Similarly, the court in *Cross Media* deemed punitive damages appropriate where the defendant had improperly obtained proprietary information about plaintiff's customers—the "lifeblood of [plaintiff's] business model," and attempted to auction it anonymously. 2006 WL 2337177 at *7. Thus, as the case law makes clear, willful

61

misappropriation of trade secrets will generally support at least a triable claim for punitive damages under New York law.

### B. Wabtec's Misconduct Was Wanton and Willful in the Extreme

Wabtec's theft and misuse of the trade secrets was nothing if not willful and wanton. Even before its license agreement had terminated, Wabtec mislabeled the Brake Products as its own, misrepresenting to customers the source of the Brake Products and causing confusion among customers in the industry. SA-32. Once the license terminated, Wabtec intentionally maintained the trade secret drawings on its computers, to which several employees had access, despite representing to Plaintiffs that the drawings had been returned or destroyed. JA-345 (21:3-11).[23]

Wabtec purposefully concealed its continued use of Faiveley's trade secrets after the expiration of the License Agreement—evidenced by the document received from a Wabtec employee showing that Wabtec was using Faiveley drawings and simply changing the part numbers and other codes. JA-430-32 (190:6-195:13); JA-818-28. Indeed, the Tribunal found Wabtec maintained the drawings in its systems and simply changed the part numbers and internal reference numbers, without changing the drawings themselves. JA-430-432 (190:6-195:13); JA-818-28. Wabtec's own documents indicate that the reason for

---

[23]     Wabtec also made disparaging comments about Plaintiffs to prospective customers, and at one point instructed its employees to refuse to assist Plaintiffs in addressing maintenance problems that a customer was having with a product that Wabtec had manufactured. SA-32 (n.2).

the change in numbering was the termination of the License Agreement. JA-818-28. Subsequently, Wabtec knowingly and intentionally misused these trade secret drawings, and involved an employee intimately familiar with them, to reverse engineer them after two legitimate attempts had failed. *Faiveley I* at 406; SA-30-31.

Even though these reverse engineered drawings were found to be tainted, and to constitute trade secret theft, Wabtec continues to this day to sell, supply, service and bid for contracts on the basis of the tainted reverse engineered products. SA-33. Wabtec has at all times known exactly what it was doing: unfairly competing with Plaintiffs by misappropriating their valuable trade secrets and disparaging them in the market. The harm to Plaintiffs is exactly what Wabtec intended and Wabtec shows no interest in stopping. "Willful" and "wanton" are thus accurate descriptions of Wabtec's misconduct. [24]

Moreover, Wabtec has clearly demonstrated a "criminal indifference to civil obligations." *Ross*, 8 N.Y.3d at 489. Robert Dezzi, who "runs the business" and is "responsible for everything that is produced" in Wabtec's Passenger Transit division, testified that he *was not aware* that any determination had been made that

---

[24] Indeed, the evidence of Wabtec's willfulness here would support a criminal charge under federal law. *See* 18 U.S.C. § 1832 (providing criminal penalties for "whoever, with intent to convert a trade secret . . . steals, or without authorization appropriates, takes, carries away or conceals, or by fraud, artifice, or deception obtains such information.")

Wabtec had misappropriated Plaintiffs' trade secrets—despite determinations made *at least four separate times*, by the Tribunal, the District Court, and even this Court. JA-453 (281:18-282:4, 310:5-311:4). This testimony caused the District Court to express concern that "the company was not taking seriously its most elemental obligation which is to tell its employees what a Court has decided as a matter of considerable importance." JA-585 (664:15-18).

The District Court's concern is very well-placed, as this is not the first time Wabtec has engaged in *this exact type* of trade secret theft. In *GE Harris Ry. Elec., L.L.C. v. Westinghouse Air Brake Co*., No. Civ. A99-070-GMS, 2004 WL 1854198 (D. Del. Aug. 18, 2004), the court found that Wabtec had violated the terms of a consent order by engaging in unauthorized use of a licensor's intellectual property in railroad parts. Just as in this case, Wabtec was found liable for selling and bidding on contracts to sell parts that went beyond the scope of a license agreement. *Id*. at *8. And, just as in this case, Wabtec was also found liable for failing to isolate a particular employee from the technology in question in violation of its "unambiguous" legal obligations. *Id*. at *12.

Wabtec's recidivism further demonstrates its "criminal indifference to civil obligations" and general reprehensibility supporting punitive damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996) ("Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or

suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law."). This firmly established principle is even included in the New York Pattern Jury Instructions on punitive damages, which instruct the jury that it may consider "how often [defendant] had committed similar acts of this type in the past."  N.Y. Pattern Jury Ins. 2:278.[25]

On this record, Wabtec's conduct amounts to much more than a mere exercise of "business judgment" constituting "corporate overreaching" and "crossing a line or going too far," as the District Court suggested.  JA-583, 587 (656:18-24, 674:2-13).  The District Court concluded that, in essence, this was a case of "pushing beyond hardball to a bit of cheating," something the Court noted was "inevitable in a laissez-faire economy."  JA-587 (674:2-13).  Surely Wabtec's

---

[25]    The District Court reserved ruling on the admissibility of this evidence, assuming admissibility for the purpose of Wabtec's motion to strike the punitive damages claim.  JA-582 (650:20-651:11).  The same assumption should apply on review here (*see Therrien*, 617 F.3d at 1259), but, in any event this evidence is plainly admissible under Fed. R. Evid. 404(b).  By its terms, this Rule only excludes "other crimes, wrongs, or acts" when offered "to prove the character of a person in order to show that he acted in conformity therewith."  *Id*.  Plaintiffs have no need to offer evidence for this purpose:  Wabtec's liability was already established on summary judgment.  Where, as here, the issue is Defendant's culpability warranting punitive damages, such evidence is expressly permitted. *See State Farm Mut. Auto. Ins., Co. v. Campbell*, 538 U.S. 408, 423 (2003) (consideration of other bad acts permissible in punitive damages context); *Gore*, 517 U.S. 559 at 576 (same); *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 n.28 (1993) (same); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991) (same).

willful and malicious misconduct is not simply a natural and tolerated "cost of doing business." Rather, it is precisely this type of "socially inefficient cost-benefit calculus" that is meant to be deterred through punitive damages. *Motorola Credit Corp. v. Uzan*, 413 F. Supp. 2d 346, 353 (S.D.N.Y. 2006). [26]

"Charging a thief the cost of what he had stolen would not adequately deter theft unless the thief was caught every time." *Ciraolo v. City of New York*, 216 F.3d 236, 243 (2d Cir. 2000) (Calabresi, J., concurring). Wabtec's attempts to cover up its misappropriation through mislabeling and a sham reverse engineering project, its continuing misappropriation of trade secrets despite a judicial finding of wrongdoing, and its interference with Plaintiffs' customer relationships (among

---

[26] The District Court also noted that the denial of a preliminary injunction "evinces in the Court's view a recognition that this was not conduct of the extreme sort that met the punitive damages requirements of New York law." JA-588 (675:14-16). The issuance of a preliminary injunction (or lack thereof) is irrelevant to the question of whether punitive damages are appropriate. A preliminary injunction requires a finding of "irreparable harm," defined as "certain and imminent harm for which a monetary award does not adequately compensate." *In re Faiveley Transport Malmö AB*, No. 08 Civ. 3330, 2009 WL 3270854, at *2 (S.D.N.Y. Oct. 7, 2009) (citing *Wisdom Imp. Sales Co. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003)). The Court denied the preliminary injunction because it found that Wabtec would not likely disseminate the trade secrets." *Id*. at *3. Thus, the denial of injunctive relief had nothing to do with whether Wabtec's conduct was "wanton, or willful," and there is no requirement in the law that defendant's misconduct must cause irreparable harm to plaintiff to justify punitive damages. *See, e.g., E.E.O.C.*, 348 Fed. Appx. at 679 (upholding denial of injunctive relief and award of punitive damages).

other evidence) demonstrate that this was no ordinary theft, and that a claim for punitive damages is entirely appropriate.

### C. The Availability of Punitive Damages Is an Issue Properly Tried to the Jury

As the record overwhelmingly demonstrates, this is a model case for the imposition of punitive damages. But even if there were any doubt as to the degree of Wabtec's moral culpability, there can be no doubt that there is sufficient evidence to put the issue before the jury. "Because punitive damages are intended to punish the wrongdoer and deter others so inclined, their availability is measured by the severity of defendant's conduct, which is a determination that can best be made after each party has a full opportunity to present their evidence." *Topps*, 380 F. Supp. 2d at 267. Whether Wabtec's conduct was sufficiently egregious is therefore a "question best answered by the finder of fact." *Id.* (citing *Loughry v. Lincoln First Bank*, 67 N.Y.2d 369, 378 (1986) ("the decision to award punitive damages in a particular case, as well as the amount, are generally matters within the sound discretion of the trier of fact.")); *AT&T Info. Sys., Inc. v. McLean Bus. Servs., Inc.*, 175 A.D.2d 652, 653 (4th Dep't 1991) ("Whether plaintiff's conduct was so reprehensible as to warrant such damages is a question of fact to be determined at trial.") (internal citation omitted).

Accordingly, the District Court erred in striking Plaintiffs' claim for punitive damages, rather than allowing it to be tried to the jury. That error should be reversed and the case remanded for trial on this limited issue.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that this Court affirm the District Court's judgment in favor of Plaintiffs, uphold the jury's verdict in its full amount, and reverse and remand the District Court's denial of punitive damages for proper resolution by a jury.

Dated: March 12, 2012          Respectfully submitted,

/s/ Andrew J. Pincus
Andrew J. Pincus
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
A. John P. Mancini
**MAYER BROWN LLP**
jmancini@mayerbrown.com
1675 Broadway
New York, New York 10019
(212) 506-2500

*Counsel for Faiveley Transport USA, Inc., Faiveley Transport Nordic AB, Faiveley Transport Amiens S.A.S.*, *and Ellcon National, Inc.*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C) OF
## THE FEDERAL RULES OF APPELLATE PROCEDURE

Pursuant Federal Rule of Appellate Procedure Rule 32(a)(7)(C), I hereby certify that this Brief of Appellees-Cross-Appellants Faiveley Transport USA, Inc., Faiveley Transport Nordic AB, Faiveley Transport Amiens S.A.S., and Ellcon National, Inc., complies witht the type-style, type-face and volume limitations contained in Rule 28.1(e)(2) of the Federal Rules of Appellate Procedure.  The brief contains 16,423 words, excluding Cover Page, Table of Contents, Table of Authorities, and Certificates.

/s/  Andrew J. Pincus

## <u>CERTIFICATE OF SERVICE</u>

I here certify that on March 12, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all particiants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: March 12, 2012                                    /s/Andrew J. Pincus